TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00313-CV






Mark S. Kudela, Appellant



v.



IKON Office Solutions, Inc., Appellee






FROM THE COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY,


NO. 242331, HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING






 Appellant Mark Kudela sued appellee IKON Office Solutions, Inc., alleging that
IKON refused to pay him $25,000, thereby breaching an employment agreement. The trial court
rendered summary judgment for IKON. On appeal, Kudela raises two issues concerning his
eligibility for the $25,000 payment under the employment agreement. We will reverse the trial
court's judgment and remand the cause.

 The factual background of this case involves two written agreements between the
parties and a written modification to one of the agreements. The summary judgment record shows
that in December 1996, Kudela and his two business partners sold to IKON four businesses: 
Legal Matters, Inc., Legal Matters of San Antonio, Inc., Legal Matters of Phoenix, Inc., and
DMI Document Retrieval, Inc. The four businesses were operated by IKON after the sale as its
Legal Matters division ("Legal Matters"). As consideration for the sale, the parties agreed to a
fixed purchase price plus an additional purchase price that was contingent on the performance of
Legal Matters during the year after the sale. Schedule 4 of the parties' purchase agreement, titled
"Earn-Out Parameters," provides that the sellers could receive an additional payment or earn-out,
not to exceed $400,000, calculated as follows: if, during calendar year 1997, Legal Matters
attained revenue of $2,600,000 and operating income of $375,000, and if its operating cash was
at least seventy-five percent of operating income, the sellers would receive four dollars for every
dollar that operating income exceeded $375,000. (1) The figures for revenue and operating income
matched the targets set out in the business plan Kudela and his principal business partner Chris
Hartenstein had drawn up for Legal Matters for 1997.

 In conjunction with the sale, Kudela and Hartenstein agreed to serve as managing
partners of Legal Matters. Kudela and Hartenstein each signed an employment agreement with
IKON for an initial term of one year. The terms of compensation in both agreements were
identical and consisted of three components: a biweekly base salary, a monthly commission of
five percent of the operating income of Legal Matters, and a year-end lump sum payment. The
clause of the employment agreement setting out the last two components follows:


Commission Structure: 5% of Operating Income of the Legal Matters Division
(determined in accordance with Company Policy) paid monthly plus an additional
aggregate lump sum payment in the amount of $25,000.00 (paid at the end of the
first twelve months after the date of this Agreement) if the Operating Income
(determined in accordance with Company Policy) of the Legal Matters division is
at least $500,000.00 for such 12 month period.

 During the early part of 1997, IKON began discussing with Kudela and Hartenstein
a proposal to merge the San Antonio operation of Legal Matters with IKON's legal document
services business that had been operating in San Antonio. By agreement signed by IKON and the
sellers, the merger became effective on April 1, 1997. Because the merger affected Legal
Matters' ability to meet the financial targets in its business plan, the agreement contained the
following clause:


To calculate your earn out, the Plan sales and [operating income] of the San
Antonio Legal Matters operation for the months of April 1997 through December
1997 will be added back to the end of year revenues and [operating income]. The
amounts to be added back are: $240,000 in revenues and $84,000 in [operating
income].


 After the close of 1997, IKON produced an earn-out statement showing that Legal
Matters' operating income for 1997, without the $84,000 adjustment for the San Antonio merger,
was $428,115.99. Adjusting operating income to include the $84,000 agreed to resulted in
operating income of $512,115.99. IKON accordingly paid the sellers the maximum $400,000 in
earn-out. Maintaining that the operating income of Legal Matters was only $428,115.99 for
purposes of Kudela's employment agreement, however, IKON refused to pay him the $25,000
year-end commission. Kudela then sued IKON for breaching the agreement to pay him.

 IKON sought summary judgment on Kudela's breach-of-contract suit on two
grounds: (1) the adjustment to operating income for the San Antonio merger applied only to the
calculation of earn-out under the purchase agreement, not to the calculation of Kudela's
commission under the employment agreement, and (2) even if the adjustment applied to the
employment agreement, accruing $50,000 for Kudela and Hartenstein's commissions would
reduce operating income below $500,000, rendering Kudela ineligible for the commission. The
trial court granted summary judgment for IKON without stating its grounds.

 In his second issue on appeal, Kudela argues that his written employment agreement
was capable of being orally modified despite the agreement's prohibition against oral modification. 
In its motion for summary judgment, IKON relied on the following clause of the employment
agreement to argue that it could not be orally modified: "This agreement may be modified only
be [sic] written agreement of the employee and Company and may not be modified by any oral
agreement." We thus consider whether IKON established as a matter of law that this clause
barred oral modification. Tex. R. Civ. P. 166a(c). Because the initial term of the contract was
twelve months from the date of its execution, subject to being terminated earlier for cause, the
contract does not fall within the statute of frauds. See Tex. Bus. & Com. Code Ann. §
26.01(b)(6) (West 1987). Further, oral agreements are no less binding than written ones, and a
party who has agreed to modify a contract only in writing is not thereby precluded from making
an oral agreement to change it. Morrison v. Insurance Co. of N. Am., 6 S.W. 605, 609 (Tex
1887); Apperson v. Shofner, 351 S.W.2d 367, 369 (Tex. Civ. App.--Waco 1961, no writ). An
agreement to modify a contract only in writing is ended by the new agreement that contradicts it. 
Morrison, 6 S.W. at 609. We conclude that IKON failed to prove that, as a matter of law,
Kudela's employment agreement could not be modified orally. We therefore sustain Kudela's
second issue.

 In his first issue, Kudela argues that he raised a fact issue as to the method of
calculating operating income under his employment agreement. On the question of calculating
operating income, IKON sought both a standard summary judgment and a no-evidence summary
judgment. See Tex. R. Civ. P. 166a(c), (i). IKON asserted as to the latter that Kudela produced
no evidence that the $84,000 adjustment based on the San Antonio agreement should be added to
Legal Matters' operating income to determine Kudela's year-end commission under the
employment agreement. Kudela responded that the summary judgment evidence showed that
when computed according to Generally Accepted Accounting Principles ("GAAP") and the
employment agreement, the operating income of Legal Matters was at least $500,000 during 1997.

 The grant of a no-evidence summary judgment invokes the same standard of review
as that of a directed verdict. Jackson v. Fiesta Mart, Inc., 979 S.W.2d 68, 70 (Tex. App.--Austin
1998, no pet.). A no-evidence summary judgment is properly granted if the nonmovant fails to
bring forth more than a scintilla of evidence raising a genuine issue of material fact. Id. at 70-71. 
If the nonmovant's evidence is so weak as to create no more than a surmise or suspicion of a fact,
the legal effect is that of no evidence. Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex.
1983). The appellate court must review all the evidence in the light most favorable to the
nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's
favor. Jackson, 979 S.W.2d at 70. The presence of a fact issue vitiates a summary judgment,
whether rendered pursuant to a standard or a no-evidence motion. See Tex. R. Civ. P. 166a(c),
(i).

 Kudela testified by affidavit that between January 1 and April 1, 1997, he and Chris
Hartenstein met a number of times with Michael Borchelt and Billy Collins of IKON. Borchelt
and Collins explained that IKON wanted to merge the San Antonio operation of Legal Matters
with IKON's Legal Document Services, which had been operating in San Antonio before IKON
bought Legal Matters. Although Kudela and Hartenstein did not object in general, they refused
to agree to the merger as proposed because the San Antonio operation of Legal Matters would
show no revenue or income. Without these, Legal Matters would have more difficulty meeting
the operating goals set forth in both the purchase agreement and the employment agreement, and
the money he and Hartenstein were to receive would be severely affected. After further
discussions, Kudela and Hartenstein agreed with IKON to combine the San Antonio operations
of IKON with the Legal Matters operation in San Antonio. Kudela and Hartenstein's agreement
with IKON was that the operating income of Legal Matters would be adjusted by adding the same
amount they had projected for the San Antonio operating income of Legal Matters before IKON
acquired it. Specifically, the agreed adjustments were to add $240,000, prorated monthly, to the
actual revenue of Legal Matters and $84,000, prorated monthly, to the actual operating income
of Legal Matters.

 At his deposition, Kudela was asked whether any oral agreements modified his
employment contract. Kudela responded that many oral agreements were made, although he was
not qualified to make a legal determination whether a modification had occurred. Kudela
continued in his affidavit that at no time during the negotiations with Borchelt or Collins, or any
later time until 1998, did anyone from IKON claim that the adjustments agreed to be made to
operating income were only for purposes of the purchase agreement. Kudela pointed out that the
employment agreement entitled him to a monthly commission of five percent of the operating
income of Legal Matters. After April 1, 1997, the adjustment for the San Antonio operation was
added to actual operating income, and IKON paid him and Hartenstein five percent of the monthly
operating income as adjusted.

 Hartenstein testified by affidavit as to the method by which IKON paid him and
Kudela the monthly five percent commission. Each month, Hartenstein took the amount of
operating income provided to him by IKON, added the projected amount from his and Kudela's
business plan for the San Antonio operation for that month, and completed a bonus request form
for himself and Kudela. IKON would then pay each of them five percent of the amount as
adjusted for that month. From April through December 1997, the monthly adjustments totaled
$84,000, the amount he and Kudela had projected for the San Antonio operation and had agreed
to with IKON.

 Kudela stated that a regional vice president of IKON told him and Hartenstein in
February 1998 that IKON would pay each of them the $25,000 commission as provided in their
employment agreements. Kudela and Hartenstein were also told that the various divisions of
IKON were in dispute as to which of them would be charged for the commissions. Legal Matters
was a cost center of a particular vice president, who was adamant that the commissions not be
charged to him. By letter dated March 16, 1998, Borchelt informed Kudela that his commission
would not be paid. After Kudela left IKON in early 1998, IKON paid Hartenstein his $25,000
commission.

 Borchelt, an officer of IKON, testified by affidavit that IKON's policy is to follow
GAAP in determining operating income. Thomas Locke, a certified public accountant, stated by
affidavit that GAAP generally requires consistency in applying accounting concepts. Because the
employment agreement does not differentiate between operating income for purposes of the
monthly commissions and operating income for purposes of the year-end commission, Locke
testified that consistency would require using the same determination of operating income for
both.

 In sum, Kudela and Hartenstein's employment agreements, which contained
identical terms, required IKON to pay both monthly and year-end commissions based on operating
income. Kudela and Hartenstein testified that IKON paid Hartenstein a $25,000 year-end
commission based on adjusted operating income. They also testified that IKON paid them
monthly commissions based on adjusted operating income. IKON's actions in paying these
commissions raise a fact issue as to whether an oral modification to Kudela's employment
agreement had occurred. See Joiner v. Elrod, 716 S.W.2d 606, 610 (Tex. App.--Corpus Christi
1986, no writ).

 Drawing reasonable inferences from other evidence also supports the existence of
a fact issue. Kudela and Hartenstein testified that, in agreeing to merge the San Antonio operation
with IKON's Legal Document Services in San Antonio, they also agreed that operating income
should be adjusted to reflect the San Antonio operation's projected operating income. The
calculation of operating income affected Kudela and Hartenstein's rights under both the purchase
and employment agreements, and the parties' understanding that the adjustments to operating
income applied only to the purchase agreement is not conclusively shown. Kudela's employment
agreement called for the monthly and year-end commissions to be based on operating income,
determined in accordance with company policy. Company policy was to calculate operating
income following GAAP, which requires that accounting concepts be applied consistently. To use
adjusted operating income to calculate Kudela's monthly commissions, but not his year-end
commission, is not reflective of a consistent policy. Although the evidence in this record presents
a close case, we resolve the issue by applying the summary judgment standard. Viewing the
evidence in the light most favorable to Kudela and indulging every reasonable inference and
resolving any doubt in his favor, we conclude that a fact issue remains as to whether Kudela's
employment agreement was orally modified to adjust the calculation of operating income. (2)

 IKON also moved for summary judgment on the ground that even if the parties had
agreed to adjust operating income under the employment agreement, accruing Kudela and
Hartenstein's $25,000 commissions in 1997 would reduce operating income below the $500,000
threshold required to earn them. Locke in response challenged IKON's argument as circular,
requiring that operating income rise to $550,000 before Kudela and Hartenstein would be eligible
for a commission. Locke's testimony presents a fact issue as to whether the amount of the
commissions could be subtracted from operating income before determining whether Kudela and
Hartenstein were entitled to receive them. In addition, a fact issue is raised by IKON's payment
to Hartenstein of the $25,000 commission. Because we have determined that Kudela raised a fact
issue on each of IKON's grounds for summary judgment, we sustain his first issue as to both
IKON's standard summary judgment motion and its no-evidence motion.

 Having sustained both of Kudela's issues, we reverse the judgment and remand
the cause to the trial court for further proceedings.



 
 Jan P. Patterson, Justice

Before Justices Jones, Kidd and Patterson

Reversed and Remanded

Filed: November 12, 1999

Do Not Publish

1. Schedule 4 defines operating income as income before interest, corporate management fees,
and taxes. It defines operating cash as the cash generated by Legal Matters before interest,
corporate management fees, and taxes. Schedule 4 also provides that the accounting and
calculation of Legal Matters' performance will be in accordance with Generally Accepted
Accounting Principles and IKON's bad debt reserve and depreciation policies.
2. Although Kudela's response was stated in general terms, we believe that it was sufficient
to point to the evidence that the parties had modified the calculation of operating income for
purposes of Kudela's employment agreement. See Tex. R. Civ. P. 166a(i) cmt. (response need
only point out evidence that raises a fact issue on challenged elements).


, stated by
affidavit that GAAP generally requires consistency in applying accounting concepts. Because the
employment agreement does not differentiate between operating income for purposes of the
monthly commissions and operating income for purposes of the year-end commission, Locke
testified that consistency would require using the same determination of operating income for
both.

 In sum, Kudela and Hartenstein's employment agreements, which contained
identical terms, required IKON to pay both monthly and year-end commissions based on operating
income. Kudela and Hartenstein testified that IKON paid Hartenstein a $25,000 year-end
commission based on adjusted operating income. They also testified that IKON paid them
monthly commissions based on adjusted operating income. IKON's actions in paying these
commissions raise a fact issue as to whether an oral modification to Kudela's employment
agreement had occurred. See Joiner v. Elrod, 716 S.W.2d 606, 610 (Tex. App.--Corpus Christi
1986, no writ).

 Drawing reasonable inferences from other evidence also supports the existence of
a fact issue. Kudela and Hartenstein testified that, in agreeing to merge the San Antonio operation
with IKON's Legal Document Services in San Antonio, they also agreed that operating income
should be adjusted to reflect the San Antonio operation's projected oper