NO. 12-03-00005-CV



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT


 

TYLER, TEXAS


 


§
 APPEAL FROM THE 



THE STATE OF TEXAS FOR THE 

BEST INTEREST AND PROTECTION
§
 COUNTY COURT AT LAW OF

OF D.P.


§
 CHEROKEE COUNTY, TEXAS






MEMORANDUM OPINION
 

 Appellant D.P. appeals from an order of commitment for temporary inpatient mental health

services and an order to administer psychoactive medication. After a hearing without a jury, the trial
court ordered D.P. committed to Rusk State Hospital for a period not to exceed ninety days. On the
same day, the trial court entered an order authorizing the Texas Department of Mental Health and
Mental Retardation to administer psychoactive medication to D.P. while she is committed to Rusk
State Hospital. In seven issues, D.P. asserts the evidence is legally and factually insufficient to
support the order of commitment, the trial court erred in ordering administration of psychoactive
medication, her constitutional rights to due process and equal protection have been violated, and she
was denied effective assistance of counsel. We affirm. 


Background

 On December 10, 2002, an application for court-ordered temporary mental health services was
filed requesting the court commit D.P. to Rusk State Hospital for a period not to exceed ninety days. 
The application was supported by a certificate of medical examination for mental illness, prepared
by a physician, Dr. Charles Plyler, who had examined D.P. on December 9. Dr. Plyler diagnosed D.P.
as having paranoid schizophrenia. He found that D.P. is mentally ill and likely to cause serious harm
to herself and others. Dr. Plyler reached these conclusions because, on December 9, D.P. attacked
her siblings and said that someone is poisoning her. Dr. Plyler found that D.P. presents a substantial
risk of serious harm to herself or others if not immediately restrained, an opinion he based on D.P.'s
behavior and on evidence of severe emotional distress and deterioration in D.P.'s mental condition
to the extent she cannot remain at liberty. Dr. Plyler indicated that, on the date he examined D.P., she
said that someone is poisoning her. She also had attacked her family and then left home in the middle
of the night.

 On December 10, 2002, D.P. was examined by Dr. S. Srinivasan who then also prepared a
certificate of medical examination for mental illness. Dr. Srinivasan also diagnosed D.P. with
schizophrenia, paranoid type, and indicated that D.P. is mentally ill and likely to cause serious harm
to herself and others. He further determined that she is suffering severe and abnormal mental,
emotional or physical distress, is experiencing substantial mental or physical deterioration of her
ability to function independently, which is exhibited by her inability to provide for her basic needs,
and she is unable to make a rational and informed decision as to whether or not to submit to
treatment. He came to these conclusions because D.P. was paranoid, aggressive, grandiose, and
delusional. He explained that D.P. had threatened her sister with bodily harm before being admitted
to the hospital. 

 Dr. Srinivasan testified at the hearing, first restating his diagnosis that D.P. is suffering from
schizophrenia, paranoid type. He determined that D.P. is mentally ill and likely to cause harm to
herself and others, and is suffering severe and abnormal mental, emotional, or physical distress, is
experiencing substantial mental or physical deterioration of her ability to function independently,
which is exhibited by her inability to provide for her basic needs, and is unable to make a rational,
informed decision as to whether or not to submit to treatment. He based this determination on his
examination of D.P., review of medical records, and on reasonable medical probabilities. Dr.
Srinivasan explained that, before she was hospitalized, D.P. was involved in a fight with her family. 
He described D.P. as psychotic, lacking insight, noncompliant, and delusional. He explained that she
does not think anything is wrong with her and she has hallucinations. While at the hospital, she has
been angry, resentful, and verbally aggressive, including the use of "cuss words." She does not take
care of herself, she believes she is being poisoned, and she refuses to take her medication. D.P. has
a history of mental illness and has been in and out of Rusk State Hospital since 1997. Dr. Srinivasan
testified that D.P.'s symptoms evidence a continuing pattern of behavior tending to confirm her
distress and the deterioration of her ability to function. He stated that D.P. is not capable of thinking
rationally, she is incapable of functioning in a productive manner, and she would be unable to hold
a job. She is unable to interact appropriately in a public setting and her symptoms would inhibit her
ability to live independently.

 On cross-examination, Dr. Srinivasan stated that D.P could not function outside the hospital. 
D.P.'s condition has neither improved nor deteriorated since coming to Rusk State Hospital. He
agreed that, while at the hospital, D.P. has committed no overt act to harm herself or anyone else. He
further explained that D.P. can dress herself, take care of her personal hygiene, and feed herself 
without assistance. Also, she can initiate and respond to conversation. He stated that D.P. cannot live
safely in freedom at this time. The doctor explained that when D.P. goes into remission, a less
restrictive environment could provide an appropriate level of supervision. 

 D.P. testified in her own behalf. She stated that she objects to taking prescription medications
because they cause side effects. If the court were to release her, she would stay with her family. She
denied physically fighting with her sibling, explaining that they just "had a few words." She said she
had not physically attacked anyone recently. She does not want to harm anyone but she would like
to report to the governor that she was mistreated by the police before they brought her to the hospital. 
She explained that she is old enough to make decisions concerning her life.

 On cross-examination, in response to the State's request for her explanation of the term
"recently," D.P. responded, "Well, to negotiate being handcuffed or to negotiate not being
handcuffed, and to have, you know, bruises on you because of such, shouldn't I come under what kind
of recommendation, manual or non-manual?"

 The trial court entered an order for temporary inpatient mental health services after
determining that the evidence supports the allegations that D.P. is mentally ill and that she is likely
to cause serious harm to herself and others, is suffering severe and abnormal mental, emotional, or
physical distress, is experiencing substantial mental or physical deterioration of her ability to function
independently, which is exhibited by her inability to provide for her basic needs, and she is unable
to make a rational and informed decision as to whether or not to submit to treatment. The court
ordered D.P. committed to Rusk State Hospital for a period not to exceed ninety days.

 The trial court immediately held the medication hearing. Dr. Srinivasan testified as to the
need for an order to administer medication. D.P. testified to explain that, due to unwanted side effects
caused by the drugs, she did not want to take the prescribed medication. The trial court granted the
State's application for an order to administer psychoactive medication. It entered an order authorizing
the State to administer certain medication to D.P. during her temporary commitment to Rusk State
Hospital.


Sufficiency of the Evidence 

 In her first issue, D.P. asserts there is no evidence, or in the alternative, factually insufficient
evidence to support the order of commitment. She argues that her refusal to take her medication is
not an overt act or continuing pattern of behavior and cannot be grounds for involuntary commitment. 
She further argues that there is no evidence in the record that she attacked or threatened anyone. 
Accordingly, she contends the State failed to show a recent overt act or a continuing pattern of
behavior tending to confirm the likelihood of serious harm to D.P. or others, or of her distress and the
deterioration of her ability to function, or of her ability to make a rational and informed decision as
to whether to submit to treatment. Thus, she argues, the State failed to meet its evidentiary burden
under the statute.

 In reviewing no evidence points of error, the reviewing court must consider only the evidence
and inferences tending to support the trial court's finding, disregarding all contrary evidence and
inferences. Wal-Mart Stores, Inc. v. Gonzalez, 968 S.W.2d 934, 936 (Tex. 1998). If there is any
evidence of probative force to support the finding, the no evidence issue must be overruled and the
finding upheld. ACS Investors, Inc. v. McLaughlin, 943 S.W.2d 426, 430 (Tex. 1997). When the
evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or
suspicion of its existence, no more than a scintilla of evidence exists and, in legal effect, is no
evidence. Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983). However, if the evidence
supplies some reasonable basis for differing conclusions by reasonable minds as to the existence of
a vital fact, some evidence or, in other words, more than a scintilla of evidence exists. Id.

 In addressing a factual sufficiency of the evidence challenge, this Court must consider and
weigh all of the evidence and set aside the verdict only if it is so contrary to the overwhelming weight
of the evidence as to be clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). Where no findings of fact and conclusions of law were requested of or filed by the trial court,
all questions of fact are presumed and found in support of the judgment. Zac Smith & Co. v. Otis
Elevator Co., 734 S.W.2d 662, 666 (Tex. 1987). In the absence of findings of fact and conclusions
of law, the judgment must be affirmed if it can be upheld on any legal theory that finds support in the
evidence. Seaman v. Seaman, 425 S.W.2d 339, 341 (Tex. 1968). 

 The trial judge may order a proposed patient to receive court-ordered temporary inpatient
mental health services if the judge or jury finds, from clear and convincing evidence, that the
proposed patient is mentally ill and, as a result of the mental illness he is likely to cause serious harm
to himself, is likely to cause serious harm to others, or is (i) suffering severe and abnormal mental,
emotional, or physical distress, (ii) experiencing substantial mental or physical deterioration of his 
ability to function independently, which is exhibited by his inability, except for reasons of indigence,
to provide for his basic needs, including food, clothing, health, or safety, and (iii) unable to make a
rational and informed decision as to whether or not to submit to treatment. Tex. Health & Safety
Code Ann. § 574.034(a) (Vernon 2003). To be clear and convincing under this statute, the evidence
must include expert testimony and, unless waived, evidence of a recent overt act or a continuing
pattern of behavior that tends to confirm either the likelihood of serious harm to the proposed patient
or others, or the proposed patient's distress and the deterioration of his ability to function. Tex.
Health & Safety Code Ann. § 574.034(d) (Vernon 2003). Clear and convincing evidence means
the measure or degree of proof which will produce in the mind of the trier of fact a firm belief or
conviction as to the truth of the allegations sought to be established. State v. Addington, 588 S.W.2d
569, 570 (Tex. 1979).

 The State provided expert testimony explaining that D.P. is mentally ill and describing a
recent overt act by D.P. The doctors' certificates indicate that, just prior to her admission to the
hospital, D.P. attacked her siblings and threatened her sister with bodily harm. Dr. Srinivasan
explained that D.P. is psychotic, delusional, non-compliant, verbally aggressive, angry, and resentful. 
This expert testimony of an overt act, as well as D.P.'s mental state, tends to confirm the likelihood
of serious harm to others, thus satisfying the statutory requirement for clear and convincing evidence
in support of the order for temporary inpatient mental health services. See Tex. Health & Safety
Code Ann. § 574.034(d). 

 The record also supports the trial court's finding that D.P. is distressed and experiencing
deterioration of her ability to function. Due to her symptoms, she is unable to obtain and keep a job.
She is not capable of functioning in a productive manner. She is unable to perform the duties that
living independently requires. Further, the testimony shows that D.P. believes she is being poisoned
and therefore refuses to take her medication. She does not believe there is anything wrong with her.
Therefore, she is unable to make a rational and informed decision as to whether to submit to
treatment. The evidence is legally sufficient to support the trial court's order. See McLaughlin, 943
S.W.2d at 430. 

 In addressing D.P.'s factual sufficiency complaint, we consider the remainder of the evidence. 
The trial court was entitled to disregard D.P.'s characterization of the family disturbance when she
said they "were not exactly fighting" but "just had a few words." The evidence shows D.P. can dress
herself, feed herself, and take care of her personal hygiene without assistance. She is able to initiate
conversation and respond to questions. However, this cannot negate the evidence that she poses a risk
to the safety of others. Likewise, the fact that she had committed no overt act to harm herself or
others during her stay at Rusk State Hospital does not diminish the evidence in the record showing
she had recently created a family disturbance requiring the aid of police and had been assaultive. 
Further, her responses to questions put to her by the State and the trial court indicate that she is not
entirely rational. Weighing all the evidence, we cannot say that the trial court's findings that D.P. is
likely to cause harm to others, that she is distressed, that her ability to function has deteriorated, and
its decision to order D.P. to submit to inpatient mental health services are so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust. See Cain, 709 S.W.2d at
176. Thus, the evidence is factually sufficient to support the trial court's findings. We overrule
D.P.'s first issue.


Constitutional Claims

 In her third and fourth issues, D.P. contends the trial court erred in rendering judgment in
violation of state and federal guarantees of due process. She asserts that certain terms found in
section 574.034 of the Health and Safety Code are overly broad, vague, and ambiguous so the statute
is susceptible to a variety of interpretations, making it violative of the due process clause of each
constitution. In her fifth and sixth issues, she asserts that application of section 574.034 results in a
violation of her right to equal protection under both the state and federal constitutions.

 D.P. did not complain to the trial court that her state and federal constitutional rights to due
process and equal protection were being violated. A constitutional claim must have been asserted in
the trial court to be raised on appeal. Dreyer v. Greene, 871 S.W.2d 697, 698 (Tex. 1993). 
Therefore, D.P. has not preserved these complaints for review. We overrule D.P.'s issues three, four,
five, and six.


Ineffective Assistance of Counsel

 In her seventh issue, D.P. contends she was denied effective assistance of counsel because trial
counsel failed to object to the constitutionality of the applicable statutes. She argues that this resulted
in her being subjected to unconstitutional statutes at trial and the loss of relief due to waiver on
appeal. 

 The United States Supreme Court has established a two-part test, also adopted by Texas
courts, to determine whether the representation of counsel was effective. The defendant must show
that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is
a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings
would have been different. Strickland v. Washington, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 2064,
80 L. Ed. 2d 674 (1984). Counsel is presumed to have rendered adequate assistance and made all
significant decisions in the exercise of reasonable professional judgment. Strickland, 466 U.S. at
689, 104 S. Ct. at 2065. The appellant has the burden of proving ineffective assistance of counsel
claims by a preponderance of the evidence. Jackson v. State, 973 S.W.2d 954, 956 (Tex. Crim. App.
1998). Claims of ineffective assistance of counsel must be supported by the record. See Mercado
v. State, 615 S.W.2d 225, 228 (Tex. Crim. App. [Panel Op.] 1981). When the record contains no
evidence of the reasoning behind counsel's conduct, we cannot conclude counsel's performance was
deficient. Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).

 The record is silent as to counsel's trial strategy. We have no evidence from counsel's
perspective concerning whether he considered challenging the constitutionality of section 574.034
and, if so, the reasons he decided not to. Therefore, we are unable to determine that the failure to
raise those issues in the trial court constitutes ineffective assistance of counsel. Jackson, 877 S.W.2d
at 771. D.P. has failed to show that her counsel's performance fell below the objective standard of
reasonableness. Further, even if we agreed that trial counsel's performance was deficient, D.P. has
failed to make any showing that she was prejudiced as a result. D.P. alludes to the fact that, had
counsel made the objections, the trial court might have agreed with him. However, she presents no
authority from which we can determine that counsel's constitutional challenges, if raised, would have
been sustained by the trial court. D.P. has failed to show that there is a reasonable probability that
the result of the proceeding would have been different but for the alleged error made by counsel. 
Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. D.P. has failed to meet her burden of proving
ineffective assistance of counsel. Jackson, 973 S.W.2d at 956. Accordingly, we overrule D.P.'s
seventh issue.


Psychoactive Medication

 In her second issue, D.P. asserts the trial court erred in entering an order authorizing
administration of psychoactive medication. She argues that such an order must be based on a valid
order for inpatient mental health care and, due to the reasons asserted in her other issues, the trial
court's order for inpatient mental health care is not valid. D.P. also asserts that the trial court erred
in ordering the administration of psychoactive medication because, in spite of a statutory requirement
to do so, the trial court did not consider her preferences regarding treatment with psychoactive
medication. She contends this is a denial of due process.

 The court may enter an order authorizing the administration of psychoactive medication if it
finds by clear and convincing evidence that the patient is under an order for temporary or extended
mental health services, the patient lacks the capacity to make a decision regarding the administration
of the proposed medication, and treatment with the proposed medication is in the best interest of the
patient. Tex. Health & Safety Code Ann. § 574.106(a) (Vernon 2003). In determining that there
is a need for psychoactive medication, the court is required to consider the following:


 (1) the patient's expressed preferences regarding treatment with psychoactive medication;


 (2) the patient's religious beliefs;


 (3) the risks and benefits, from the perspective of the patient, of taking psychoactive medication;


 (4) the consequences to the patient if the psychoactive medication is not administered;


 (5) the prognosis for the patient if the patient is treated with psychoactive medication; and


 (6) alternatives to treatment with psychoactive medication.


Tex. Health & Safety Code Ann. § 574.106(b) (Vernon 2003).

 Dr. Srinivasan testified at the hearing on the State's application for court-ordered
administration of psychoactive medication. He stated that D.P. refuses to take her medication
voluntarily and, in his opinion, she lacks the capacity to make a decision regarding the administration
of such medication. The doctor testified that treatment with the medications indicated on the
application is the proper course of treatment for D.P. and in her best interest. He said D.P. would
benefit from their use and the benefits outweigh the risks. He testified that her stay in the hospital
would likely be shortened with the use of these medications. On cross-examination, Dr. Srinivasan
acknowledged that D.P. said she did not want the medications. He also repeated his earlier testimony
that use of these medicines would improve D.P.'s condition and allow her to leave the hospital earlier. 
The doctor testified that there are no alternatives to the use of psychoactive medications that could
render the same or similar results.

 D.P. testified that she objects to the doctor's testimony. She explained that she stopped taking
the medicine because it caused side effects. She wants no medicines whatsoever because they all
have side effects. The court asked D.P. what side effects she had experienced. She responded, "Well,
I had an eye problem. I had a problem with ophthalmologists." The court started to ask another
question and D.P. interrupted to say, "They all pose ophthalmologist problems."

 Having disagreed with all of D.P.'s assertions in her other six issues, we have determined that
the trial court's order for temporary mental commitment is valid. Therefore, we reject D.P.'s
argument that the order authorizing administration of psychoactive medication is invalid on that basis. 
See Tex. Health & Safety Code Ann. § 574.106(a). 

 Dr.Srinivasan's testimony encompassed the factors in Section 574.106, except for D.P.'s
religious beliefs. D.P. did not offer evidence of her religious beliefs. D.P. did express her preference
to be free of medications; however, the trial court is not required to defer to her preference on the
subject. We conclude that the trial court met the obligations imposed on it by Section 574.106. We
overrule D.P.'s second issue.


Conclusion

 The evidence is legally and factually sufficient to support the trial court's order of
commitment for temporary inpatient mental health services. D.P.'s constitutional complaints have
not been preserved and her trial counsel was not ineffective. Further, the trial court did not err in
ordering administration of psychoactive medication.

 We affirm the trial court's orders of commitment for temporary inpatient mental health
services and for administration of psychoactive medication.


 JAMES T. WORTHEN 

 Chief Justice



Opinion delivered August 20, 2003.

Panel consisted of Worthen, C.J., Griffith, J. and DeVasto, J.

















(PUBLISH)