Opinion issued January 20, 2005
















In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-03-00435-CV
____________
 
TIMOTHY J. GOLLIN, Appellant
 
V.
 
HOARD GAINER INDUSTRY CO., LTD., Appellee
 

 
 
On Appeal from the 133rd District Court
Harris County, Texas
Trial Court Cause No. 2002-13080
 

 
 
MEMORANDUM OPINION
          Hoard Gainer Industry Co., Ltd., appellee, sued Gollin & Co., Inc. on a sworn
account and sued Timothy J. Gollin, appellant, for having used the corporation as a
sham to perpetrate a fraud. A jury found that Gollin was responsible for the conduct
of Gollin & Co., Inc. and awarded Hoard Gainer $898,000 in damages. In one issue,
Gollin contends that the trial court erred in entering a judgment piercing the corporate
veil without any evidence meeting the requirements of the Texas Business
Corporation Act article 2.21.


 We reverse and render a take-nothing judgment.
Background
          In 1992, Gollin founded Gollin & Co. to import components for office chair
manufacturers, primarily in the United States and Canada. Gollin testified that they
“sold them casters and chair arms and wood that went into making the kinds of chairs
you buy at Office Depot.” Gollin & Co. grew into a 45-employee company that
peaked in 1999 with sales of $30 million. 
          Gollin & Co. purchased furniture parts from Hoard Gainer Industry Co., Ltd. 
Robert Li, the United States representative for this Taiwanese company, testified that,
at first, it required Gollin & Co. to pay for the parts at the time of delivery, but, over
the years, a trust relationship was formed, and Gollin & Co. would buy parts on
credit. Gollin testified that, between 1997 and 1999, Gollin & Co. bought and timely
paid for several million dollars worth of goods from Hoard Gainer. Li testified that,
in late 1998 and early 1999, Hoard Gainer sent Gollin & Co. $898,037.04 in parts that
would be worth three or four times the purchase price once they were assembled. 
Gollin, the president, CEO, and majority shareholder of Gollin & Co., did not
personally guarantee the purchase. Gollin & Co. never paid Hoard Gainer.
          Gollin testified that, in 1998, Gollin & Co. grew rapidly, and, by the end of
1999, it “ran into serious cash flow problems.” Gollin testified that he informed
Hoard Gainer “pretty much what our situation was during the course of 1998 and
1999 as we were tight for cash and — which we believe was largely the result of
growing pains.” Gollin explained that Hoard Gainer was “anxious to increase the
volume of business they were doing with us. We believed we would be able to
survive our growth spurt and we were making regular payments to them on a weekly
basis.” 
          In 1998, Gollin’s salary was $70,000, but increased to $100,000 in 1999. 
Gollin justified the salary increase by explaining that the company had tremendous
growth in 1998. He further explained that, he never received the full salary in 1999
because the company stopped assessing salaries. He testified that he received no
salary at all in 2000. 
          Gollin testified that, instead of filing for bankruptcy, Gollin & Co. decided to
liquidate its assets and attempt to pay off its creditors. By the time it ceased
operations in mid-2000, Gollin & Co. was indebted to many creditors, including
owing $889,037. 34 to Hoard Gainer. 
          For about one year after Gollin & Co. closed its doors, Gollin “wound up doing
some contract work to do just whatever [he] could to pay [his] bills because [he]
didn’t have any money.” In the fall of 2000, a friend invested more than $200,000
into a new investment company, Travis Street Partners, and Gollin was named the
Chief Executive Officer (CEO). Travis Street Partners owns shares in ICO, a
company that is worth more than $2.5 million and does almost $200 million in
revenues a year. Gollin is CEO of ICO, as well.


 
          Before trial, the parties stipulated that Gollin & Co. owed Hoard Gainer
$889,037.34. At trial, Hoard Gainer’s only theory of liability alleged that Gollin was
using Gollin & Co. as a sham to perpetuate a fraud, piercing the corporate veil of
protection. The jury found that Gollin was personally liable for Gollin & Co.’s
indebtedness. Hoard Gainer was awarded $889,037, in addition to pre- and post-judgment interest. The trial court denied Gollin’s motion notwithstanding the verdict
and motion for new trial.
Piercing the Corporate Veil
          In his sole issue, Gollin contends that the evidence is legally and factually
insufficient to support the jury’s finding that he pierced the corporate veil by using
Gollin & Co. for the purpose of perpetrating a fraud on Hoard Gainer for his direct
personal benefit.
Standard of Review 
          When an appellant challenges the legal sufficiency of the evidence to support
a finding on which it did not have the burden of proof at trial, the appellant must
demonstrate on appeal that no evidence exists to support the adverse finding. 
Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983). In conducting a no-evidence
review, an appellate court must “view the evidence in a light that tends to support the
finding of the disputed fact and disregard all evidence and inferences to the contrary.” 
Bradford v. Vento, 48 S.W.3d 749, 754 (Tex. 2001). A no-evidence point may be
sustained only when the record discloses one of the following: (1) there is a complete
absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence
from giving weight to the only evidence offered to prove a vital fact; (3) the evidence
offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence
establishes conclusively the opposite of the vital fact. Uniroyal Goodrich Tire Co.
v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998).
          If there is more than a scintilla of evidence to support the finding, the claim is
sufficient as a matter of law. Browning-Ferris, Inc. v. Reyna, 865 S.W.2d 925, 928
(Tex. 1993). But, if the evidence offered to prove a vital fact is so weak that it does
nothing more than create a mere surmise or suspicion of its existence, the evidence
is no more than a scintilla and, in legal effect, is no evidence. Kindred v. Con/Chem,
Inc., 650 S.W.2d 61, 63 (Tex. 1983). “More than a scintilla of evidence exists where
the evidence supporting the finding, as a whole, ‘rises to a level that would enable
reasonable and fair-minded people to differ in their conclusions.’” Burroughs
Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995) (quoting Transp. Ins. Co.
v. Moriel, 879 S.W.2d 10, 25 (Tex. 1994)).
          In reviewing a factual-sufficiency point, we consider all the evidence
supporting and contradicting the finding. Plas-Tex, Inc. v. U.S. Steel Corp., 772
S.W.2d 442, 445 (Tex. 1989). We set aside the verdict only if the finding is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). In a bench trial, the trial
court, as factfinder, is the sole judge of the credibility of the witnesses. Southwestern
Bell Media, Inc. v. Lyles, 825 S.W.2d 488, 493 (Tex. App.—Houston [1st Dist.] 1992,
writ denied).
Personal Benefit
          Here, the parties agreed to the jury charge, and, in addition to a damages
question,


 the jury was asked the following question:
Question 1
Is Timothy J. Gollin responsible for the conduct of Gollin & Co., Inc.?
Timothy J. Gollin is “responsible” for the conduct of Gollin & Co., Inc.
if:
 
Timothy J. Gollin used Gollin & Co., Inc. for the purpose of perpetrating
and did perpetrate an actual fraud on Hoard Gainer Industry Co., Ltd.
primarily for the direct personal benefit of Timothy J. Gollin.
 
“Actual Fraud” means dishonesty of purpose or intent to deceive.
 
Answer “Yes” or “No.”
 
Answer: (Yes)

On appeal, Gollin contends that the evidence was legally and factually insufficient
to support this finding.
          To survive this sufficiency challenge, there must be sufficient evidence to
support a finding of (1) actual fraud (2) for the direct personal benefit of Gollin. If
there is no evidence that Gollin personally benefitted, we need not determine whether
there was actual fraud.
          Hoard Gainer’s attorney attempted to imply that, because there were numerous
international wire transfers from Gollin & Co., Gollin must have personally benefitted
from the transfers. Li, however, testified that he had no knowledge and no evidence
regarding the recipient of the wire transfers. Li was specifically asked as follows:
Q.It is true that you don’t know of your own personal knowledge
what Tim Gollin said or didn’t say at the time the goods were
purchased?
 
A.I don’t know.
 
Q.Do you have copies of any checks to Tim Gollin showing that he
received money other than salary?
 
A.No.
 
. . .
 
Q.Do you have evidence that Tim Gollin allowed assets to be
diminished in value to the prejudice of the creditors?
 
A.No.
 
. . .
 
Q.Do you have evidence that Tim Gollin co-mingled his personal
assets with assets of the corporation?
 
A.I am not there. How can I know what he do?
 
Q.Your answer is no?
 
A.I don’t know how to answer this question.
 
Q.Do you have evidence that Tim Gollin used assets of the company
for his personal benefit?
 
A.Evidence? I don’t know because I am not his family member. 
How can I know?
. . .
 
Q.Do you know of your own personal knowledge whether Tim
Gollin ever gave Hoard Gainer financial information that was not
true and correct?
 
A.No.

Hoard Gainer argues in its brief that, after it assembled and sold the parts that Hoard
Gainer gave Gollin & Co., Gollin used Gollin & Co.’s money to “pay his personal
debts.” (Emphasis added.) This is not an accurate depiction of the testimony. Li was
asked if he heard any of the conversation between his brother, Hoard Gainer’s
president, and Gollin when Gollin announced that Gollin & Co. would not be able to
repay Hoard Gainer. Li responded, “I overheard [Gollin] say he had to use money to
pay his debt or something of that sort.” Gollin was the president and CEO of Gollin
& Co. He testified that it used the money to pay its vendors, and the assets of the
company were liquidated to pay its creditors. There is no evidence that Gollin used
the proceeds to pay his personal debts.
          Hoard Gainer’s attorney implied that, because his salary increased from
$70,000 in 1998 to $100,000 in 1999, Gollin must have benefitted from Hoard
Gainer’s debt. Li was asked, 
          Q.      Would you – if Hoard Gainer have (sic) given those
products to Tim Gollin, had they known he wasn’t going to
get – pay, he was going to give himself a raise for two
years –
 
          A.      No.
 
          Q.      Does that show Tim Gollin personally benefitted from your
products?
 
          A.      Yes. 

Gollin testified that Gollin & Co. had annual sales of more than $20 million. 
Furthermore, Gollin justified the pay increase due to the 50-60% growth that Gollin
& Co. experienced in 1998. Here, again, this excerpted testimony is based on
speculation and is not evidence that Gollin’s salary increase was a personal benefit
that he received as a result of the transaction with Hoard Gainer. 
          Hoard Gainer also implied that, because he personally guaranteed some debts
of Gollin & Co. and not the debt in question, Gollin personally benefitted from
repaying the guaranteed debts first. To support this contention, Hoard Gainer cites
a portion of the record that states no such thing. The cited record is as follows:
          Q.      Would you tell the jury why you were unable to pay Hoard
Gainer the money that they sued for in this lawsuit?
 
          A.      Because we borrowed to provide working capital for the
company and to help us invest in warehouses we put up
around the US, and also a factory we had ownership in in
Brazil. We had consumed cash, and when we were no
longer able to pay our creditors, we – the bank had a lien
against all of our assets. The bank came in and basically
collected all the receivables, took cash to satisfy what was
owed to them. The remaining funds weren’t enough to
allow us to keep operating. We let people off, paid
severance, had to pay their salaries and benefits, and there
was no cash left over. We were left with some inventory
in the spring of – spring/summer of ‘99, by which point we
reduced office staff to five or six people. We vacated our
premises on Westpark and moved to a very small space.
 
We were trying to survive. And we offered to pay creditors
– to make a settlement with creditors with whatever cash
we had left over.

This is not evidence that Gollin personally benefitted from the transaction in question.
          Hoard Gainer submitted no evidence that Gollin personally benefitted from this
unpaid debt. Having held accordingly, we need not address Gollin’s argument that
the evidence was legally and factually insufficient to support a finding of fraud.
          We sustain Gollin’s sole point of error. 
Conclusion
          We reverse and render a judgment that Hoard Gainer Industry Co., Ltd. take
nothing from Timothy J. Gollin.

                                                                        George C. Hanks, Jr.
                                                                        Justice

Panel consists of Justices Taft, Keyes, and Hanks.