

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00758-CV

Michelle **NIÑO**, Individually and
as Personal Representative of the Estate of Robert Niño, Deceased;
Julyssa Sixx Niño; Robert Niño Jr.; and Alyssa Nikki Niño;
Appellants

v.

**PRIMORIS ENERGY SERVICES CORP.**,
Appellee

From the 365th Judicial District Court, Dimmit County, Texas
Trial Court No. 15-12-12787-DCVAJA
Honorable Amado J. Abascal III, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice
Irene Rios, Justice

Delivered and Filed: July 10, 2019

AFFIRMED

Michelle Niño, individually and as personal representative of the Estate of Robert Niño;
Julyssa Sixx Niño; Robert Niño Jr.; and Alyssa Nikki Niño (collectively the Niños) appeal a no-
evidence summary judgment granted in favor of Primoris Energy Services Corp. The Niños assert
they presented more than a scintilla of evidence that Primoris's gross negligence caused Robert
Niño's death. We affirm the trial court's judgment.

**BACKGROUND**

Robert Niño, an employee of Primoris, was working with three other employees to change filters inside a vessel at a natural gas facility. The other employees were Brandon Reyna, the designated safety representative; Francisco Ramos, the foreman; and Roy Quilimaco, whose job was to continuously watch the employee working inside the vessel and monitor the situation for potential hazards. Both Robert and Ramos worked at various times inside the vessel which required them to wear protective clothing and air respirator equipment. The protective gear was described as heavy and "hot."

The crew began working around 10:00 a.m. and finished replacing the filters around 5:30 p.m.—with several breaks for water and lunch. After the filters were replaced but before the job site was cleaned, Reyna observed Robert sitting in the work crew truck. When Reyna approached Robert, Robert told him his vision had blurred and he had tripped and fallen to the ground while he was on his way to the restroom. Robert added that he got up after a short time, used the restroom, and returned to the crew's work truck to rest.

Based on this information and Reyna's observation that Robert was sweating heavily,[1] Reyna stayed with Robert and decided to take measures relating to possible heat stress, including initiating an incident investigation and reporting process. Reyna transferred Robert to his vehicle, turned on the air conditioning, brought Robert more water, and informed Ramos.[2] The decision was made that Robert would not return to work. Reyna reported the incident to three managers, including the regional safety manager, and Robert was repeatedly asked if he wanted to be taken

---

[1] Reyna stated he believed the fact that Robert was sweating heavily was a good sign "[b]ecause in the event that a person is into a level of heat injury that is considered heat stroke, a very high level of heat exhaustion, their body would stop sweating."

[2] The crew's work truck could not be safely turned on due to its proximity to the vessel.

to the hospital or a doctor for medical treatment.[3]  Robert repeatedly declined.[4]  After the job site was cleaned and the vessel secured, the crew left the job site with Robert riding with Reyna, and Quilimaco riding with Ramos.

Reyna and Robert carried on a conversation before stopping at a convenience store approximately forty-five minutes after leaving the job site.  Robert used the restroom, and Reyna purchased a Gatorade and a banana for him because Robert previously told Reyna he did not have any money.  Quilimaco spoke with Robert at the convenience store.  Quilimaco described Robert as tired but fine and speaking coherently.

After leaving the convenience store, Reyna and Robert continued to talk for the remaining two-hour drive.  When Reyna again offered Robert medical assistance upon arriving at his house, Reyna described Robert as being annoyed with the conversation.  As he exited the vehicle, Robert told Reyna he was feeling fine, and Reyna believed Robert looked okay.  Reyna did not believe Robert had continued sweating while at the convenience store or when they arrived at his house.  While showering a short time later, however, Robert collapsed and died from a heart attack.

The Niños sued Primoris asserting a claim for gross negligence.  The trial court granted Primoris's no-evidence motion for summary judgment, and the Niños appeal.

### STANDARD OF REVIEW

We review a no-evidence summary judgment under the same legal sufficiency standard as a directed verdict.  *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 130 (Tex. 2018).  "Under this standard, the nonmovant has the burden to produce more than a scintilla of evidence to support

---

[3] When Reyna was asked why he continued asking Robert about being taken to the doctor after leaving the job site, Reyna responded, "Because just on the off chance that he might have been trying to be, quote, unquote, a tough guy and ignoring something."

[4] Robert told Primoris's regional safety manager that he was fine and probably did not eat enough that day.  Robert also told his daughters he did not need medical assistance when they asked him after he arrived home.

each challenged element of its claims." *Id.* "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)). "More than a scintilla of evidence exists when the evidence 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *Id.* (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). "[W]e view the evidence 'in the light most favorable to the nonmovant, crediting evidence a reasonable jury could credit and disregarding contrary evidence and inferences unless a reasonable jury could not.'" *Painter*, 561 S.W.3d at 130 (quoting *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013)).

### GROSS NEGLIGENCE

Generally, recovery of workers' compensation benefits is the exclusive remedy of a legal beneficiary against an employer for the death of an employee. *See* TEX. LAB. CODE ANN. § 408.001(a); *TIC Energy & Chem., Inc. v. Martin*, 498 S.W.3d 68, 69 (Tex. 2016). "The only exception to the exclusive remedy provision is when an employee's death 'was caused by an intentional act or omission of the employer or by the employer's gross negligence.'" *Port Elevator-Brownsville v. Casados*, 358 S.W.3d 238, 241 (Tex. 2012) (quoting TEX. LAB. CODE ANN. § 408.001(b)). In this context, the term "gross negligence" means an act or omission

(A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

(B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(11); *see Lee Lewis Const., Inc. v. Harrison*, 70 S.W.3d 778, 798 (Tex. 2001) (recognizing that the Workers' Compensation Act invokes the definition of gross negligence in Civil Practice and Remedies Code section 41.001).

As the definition states, gross negligence has both an objective and a subjective component. Under the objective element, an extreme risk is "not a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff." *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998). "[T]he risk must be "examined prospectively from the perspective of the actor, not in hindsight." *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 248 (Tex. 2008). To establish the subjective component, "the plaintiff must show that the defendant knew about the peril, but his acts or omissions demonstrate that he did not care." *Diamond Shamrock Ref. Co. v. Hall*, 168 S.W.3d 164, 173 (Tex. 2005) (quoting *Louisiana-Pac. Corp. v. Andrade*, 19 S.W.3d 245, 247–48 (Tex. 1999)).

## DISCUSSION

On appeal, the Niños contend Primoris was grossly negligent in failing to take Robert to the hospital for medical treatment. Specifically, the Niños assert, "Primoris employees and management at all levels were aware that Robert was having serious health issues and that he needed immediate medical treatment" and "showed conscious indifference to Robert because instead of taking him to the hospital for immediate treatment, it drove him three hours to his house."

The summary judgment evidence established Reyna believed Robert was suffering from heat stress. Reyna immediately responded to those symptoms by placing Robert in his air-conditioned truck and giving him water. Robert was repeatedly asked if he would like to be taken for medical treatment, and he repeatedly declined. Robert carried on a conversation with Reyna throughout the drive from the job site to Robert's house, and Robert continued to decline offers of

medical assistance. Reyna purchased Robert a Gatorade and a banana at the convenience store, and Quilimaco described Robert as tired but fine. When they arrived at Robert's house, Robert again declined medical assistance and told Reyna he was fine.

As previously noted, to establish the subjective component of gross negligence, "the plaintiff must show that the defendant knew about the peril, but his acts or omissions demonstrate that he did not care." *Diamond Shamrock Ref. Co.*, 168 S.W.3d at 173 (quoting *Andrade*, 19 S.W.3d at 247–48). In this case, the evidence established that Primoris knew, through its employees, that Robert was potentially suffering from heat stress; however, no evidence established that the acts or omission of the Primoris employees demonstrated that they did not care. Instead, the evidence conclusively established that Primoris's employees took precautions and repeatedly offered Robert medical assistance—which he repeatedly declined, and Robert appeared to be tired but fine when he was dropped off at his house. *See U–Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 141 (Tex. 2012) ("[A] party cannot be liable for gross negligence when it actually and subjectively believes that circumstances pose no risk to the injured party, even if [it is] wrong."); *Diamond Shamrock Ref. Co.*, 168 S.W.3d at 172 ("Although the employees were mistaken, there was no evidence of conscious indifference to the risk of harm.").

CONCLUSION

Because there was no evidence of Primoris Energy's gross negligence, the trial court did not err in granting Primoris's no-evidence motion for summary judgment. The trial court's judgment is affirmed.

Patricia O. Alvarez, Justice