Opinion issued February 18, 2010

















In The
Court of Appeals
For The
First District of Texas




NO. 01-07-00233-CV




DIXON FINANCIAL SERVICES, LTD. AND HYPERDYNAMICS
CORPORATION, Appellants

V.

JAMES CHANG, NICK H. JOHNSON, RILEY L. BURNETT, JR., AND
JOHNSON, BURNETT & CHANG, L.L.P., Appellees




On Appeal from the 215th Judicial District Court 
Harris County, Texas
Trial Court Cause No. 2001–06263




O P I N I O N 

          We withdraw our August 31, 2009 opinion, substitute this opinion in its place, 
and vacate our judgment of that date.


 
          In one issue, appellants, Dixon Financial Services, Ltd. (“Dixon Financial”)
and Hyperdynamics Corporation (“Hyperdynamics”), contend that the trial court erred
by granting summary judgment in favor of appellees, James Chang, Nick H. Johnson,
Riley L. Burnett, Jr., and Johnson, Burnett & Chang, L.L.P. 
          We affirm.
Background



          In September 1999, Ron Bearden and R.F. Bearden Associates, Inc.
(collectively, “Bearden”), Erin Oil, and Bill Knollenberg, principal of Erin Oil,
obtained an arbitration award against Michael Watts, a securities broker, and Texas
Capital Securities, the securities brokerage firm for whom Watts worked. As part of
the award, Bearden, Knollenberg, and Erin Oil were awarded, jointly and severally,
“140,000 shares of common stock and 200,000 warrants in Hyperdynamics.” In the
arbitration proceeding, Greenberg, Peden, Siegmyer & Oshman, P.C. (“Greenberg
Peden”) represented Bearden, and the law firm of Johnson, Burnett, & Chang (“JBC”)
represented Erin Oil and Knollenberg. 
          In an effort to collect the arbitration award, JBC attorney James Chang notified
Hyperdynamics’s transfer agent, Fidelity Transfer Company (“Fidelity”), of the
award. Chang sent a number of correspondences to Fidelity to secure his clients’
interest in the Hyperdynamics stock by instructing Fidelity that the subject stock
should not be transferred or conveyed. Chang told Fidelity that “some of [the]
securities of [Hyperdynamics] that our client is entitled to in accordance with the
[arbitration award] are held or deposited in an account in the name of Island
Communications Investments, Ltd.” Chang warned Fidelity that it should not transfer
or convey common stock or other securities held or owned by Island
Communications. 
          Chang, on behalf of Erin Oil and Knollenberg, and Greenberg Peden attorney
Gerald Siegmyer, on behalf of Bearden, filed suit (“the Watts litigation”) against
Texas Capital, Michael Watts, and Hyperdynamics, seeking confirmation of the
arbitration award and injunctive relief. Erin Oil, Knollenberg, and Bearden (“the
Watts plaintiffs”) alleged that Watts had sold securities belonging to them for Watts’s
own personal benefit. The Watts plaintiffs further alleged that Watts had transferred
shares of Hyperdynamics stock, to which they were entitled, into the account of
Island Communications. The Watts plaintiffs obtained a temporary restraining order
restricting the transfer of Hyperdynamics stock out of Island Communications’s
account. 
          The Watts plaintiffs entered into a settlement agreement with Hyperdynamics
in the Watts litigation. The Watts plaintiffs agreed to dismiss Hyperdynamics from
the suit, and Hyperdynamics agreed that it would not allow Michael Watts “to sell,
transfer, assign or exercise any warrant or option to purchase any securities of
HyperDynamics.” 
          Chang tried unsuccessfully to obtain information from Fidelity regarding which
Hyperdynamics stock being held in Island Communications’s name belonged to his
clients. Fidelity informed Chang that Kent Watts, principal of Hyperdynamics and
brother of Michael Watts, had requested the transfer of 574,500 shares of
Hyperdynamics stock held in Island Communications’s name to Dixon Financial. 
Chang informed Fidelity that “there were adverse claimants to those shares held in
the name of Island and that [Hyperdynamics] may be prohibited from transferring any
shares in the name of Island.” 
          Approximately one year later, Dixon Financial filed the underlying suit against
Hyperdynamics, Fidelity, Greenberg Peden, Siegmyer, Bearden, Erin Oil,
Knollenberg, James Chang, JBC, and two other JBC partners: Nick Johnson and
RileyBurnett, Jr.


 Dixon Financial asserted that Chang and his “co-conspirators” had
falsely claimed and misrepresented that Dixon Financial’s stock shares held in the
name of Island Communications were subject to the arbitration award obtained by the
Watts plaintiffs. Specifically, Dixon Financial alleged that Chang had misrepresented
to Fidelity that “the 574,500 shares of stock of Hyperdynamics held in the name of
Island Communications was in fact property of Chang and Siegmyer’s clients and the
subject of an arbitration award.” Dixon Financial further alleged that, based on the
misrepresentation, Fidelity had “placed a ‘hold’ on the 574,500 shares of
Hyperdynamics stock” owned by Dixon Financial thereby preventing Dixon Financial
“from exercising any ownership rights to the stock, including its ability to sell the
stock at a time when the stock was trading large volume at a higher price.” 
          Dixon Financial also claimed that “[t]he defendants intentionally and
knowingly misrepresented facts to the court in order to obtain the Temporary
Restraining Order” in the Watts litigation. Dixon Financial asserted that the
restraining order was “sought and obtained” by “using a false and perjurious affidavit
signed by Chang.” Dixon Financial further alleged that Chang, “with the knowledge
and consent of his co-conspirators [including Bearden, Greenberg Peden, and
Siegmyer], intentionally and knowingly on numerous times contacted Fidelity. . . and
wrongfully advised [Fidelity]” that the temporary restraining order “prohibited
Fidelity” from issuing the Hyperdynamics stock to Dixon Financial. Dixon Financial
further alleged that, when Fidelity finally transferred the stock to it, the stock “had
dropped from a high in January 2000 of $7.75 per share when Dixon Financial was
entitled to receive the shares to less than $2.00 resulting in a loss [to Dixon Financial]
in excess of $3,000,000.” 
          Dixon Financial asserted causes of action against Bearden, Greenberg Peden,
Siegmyer, Erin Oil, Chang, JBC, Nick Johnson, and Riley Burnett, Jr. for conversion,
abuse of process, tortious interference, and fraud. Dixon Financial claimed that the
defendants were jointly and severally liable based on theories of conspiracy, agency,
and concert of action. 
          Hyperdynamics also filed a cross-claim against Bearden, Greenberg Peden,
Siegmyer, Erin Oil, Chang, JBC, Johnson, and Burnett asserting claims for negligent
misrepresentation, tortious interference, abuse of process, malicious prosecution of
a civil suit, and contribution. Like Dixon Financial’s claims, Hyperdynamics’s cross-claims were premised on allegations that Chang had misrepresented to the trial court
and to Fidelity the extent to which the arbitration award applied to Hyperdynamics’s
stock held in the name of Island Communications. 
          Hyperdynamics also filed a cross-claim for breach of contract. Hyperdynamics
asserted that the defendants had breached the settlement agreement between it, Erin
Oil, and Bearden in the Watts litigation. Hyperdynamics claimed that the defendants
continued to interfere with the transfer of its stock to Dixon Financial “in violation
of the spirit and terms of the agreement.” 
          Greenberg Peden and Siegmyer filed motions for summary judgment, asserting
that Dixon Financial had no actionable claim against them, as a matter of law, for
conduct undertaken in the representation of a client. The attorneys based the motions
for summary judgment on Dixon Financial’s pleadings. Concomitantly, Bearden filed
a motion for summary judgment contending that, as a matter of law, it could not be
liable for the conduct of its attorneys. 
          Chang, JBC, Johnson, and Burnett (collectively hereinafter “the JBC
defendants”) also filed a motion for summary judgment. Like Greenberg Peden, the
JBC defendants asserted that Dixon Financial failed to state an actionable claim. The
JBC defendants pointed out that, as pled, Dixon Financial’s claims were premised on
conduct undertaken in the representation of JBC’s clients during litigation and was
therefore privileged. Greenberg Peden, Siegmyer, and the JBC defendants also filed
a joint motion for summary judgment against Hyperdynamics, which asserted this
same argument with respect to Hyperdynamics’s tort claims. The joint motion for
summary judgment also raised a no-evidence challenge, asserting that Hyperdynamics
could present no evidence of damages, an essential element of its cross-claims,
including its breach of contract claim. 
          The trial court granted each of the motions for summary judgment. Greenberg
Peden, Siegmyer, and Bearden (“the Greenberg Peden defendants”) requested the trial
court to sever Dixon Financial’s and Hyperdynamics’s claims against them from the
remainder of the case. In May 2006, the trial court granted the severance converting
the order granting summary judgment in favor of the Greenberg Peden defendants
into a final, appealable judgment. The JBC defendants did not seek a severance of
Dixon Financial’s and Hyperdynamics’s claims against them. The order granting the
JBC defendants’ motion for summary judgment remained interlocutory. In addition,
Dixon Financial’s and Hyperdynamics’s claims against Knollenberg and Erin Oil
remained in the trial court. 
          In appellate cause number 01-06-00696-CV, Dixon Financial and
Hyperdynamics appealed the summary judgments granted by the trial court in favor
of the Greenberg Peden defendants. We affirmed the summary judgments obtained
by the Greenberg Peden defendants against Dixon Financial and Hyperdynamics in
Dixon Financial Services, Ltd. v. Greenberg, Peden, Siegmyer & Oshman, P.C., No.
01-06-00696-CV, 2008 WL 746548 (Tex. App.—Houston [1st Dist.] Mar. 20, 2008,
pet. denied) (mem. op.). There, we discussed the law regarding an attorney’s
immunity from suit with respect to action he takes in the representation of a client. 
See id. at *7–8. We recognized that to promote zealous representation, courts have
held that an attorney has “qualified immunity” from civil liability, with respect to
non-clients, for actions taken in connection with representing a client in litigation. 
Id. at *7 (citing Alpert v. Crain, Caton & James, P.C., 178 S.W.3d 398, 405 (Tex.
App.—Houston [1st Dist.] 2005, pet. denied)). 
          We agreed with the Greenberg Peden defendants that the conduct alleged by
Dixon Financial and Hyperdynamics as being tortious was not actionable because it
constituted conduct undertaken by an attorney to assist a client in securing and
recovering an arbitration award. See id. at *11. For this reason, we concluded that
the Greenberg Peden defendants were entitled to summary judgment as a matter of
law. Id.
          As mentioned, Dixon Financial’s and Hyperdynamics’s claims against
Knollenberg and Erin Oil remained pending in the trial court, as did the interlocutory
order granting summary judgment in favor of the JBC defendants. On February 22,
2007, the trial court signed a “Final Judgment” addressing the remaining claims. 
          The Final Judgment reflected that the trial court conducted a jury trial between
January 29, 2007 and February 1, 2007. The judgment recited that Knollenberg, who
had previously appeared in the lawsuit pro se and had notice of the trial setting, did
not appear at trial. The judgment reflected that, after receiving proper service, Erin
Oil never filed an answer or otherwise appeared. 
          In the Final Judgment, the trial court ordered that the interlocutory summary
judgments obtained by the JBC defendants against Dixon Financial and
Hyperdynamics became final. The Final Judgment also ordered that a default
judgment be entered against Erin Oil and Knollenberg and that Dixon Financial and
Hyerdynamics recover damages from both entities. 
          After the trial court signed the Final Judgment, Knollenberg retained counsel
and filed a “Motion to Modify the Judgment, or in the Alternative, for Entry of
Judgment N.O.V.” In the motion, Knollenberg challenged the portions of the Final
Judgment awarding damages against him in favor of Dixon Financial and
Hyperdynamics on the basis that Dixon Financial and Hyperdnamics had non-suited
their respective claims against him two years earlier in April 2005. The trial court
conducted two hearings and, on May 22, 2007, signed an “Amended Judgment,”
which provided, in relevant part, that Dixon Financial and Hyperdnamics had non-suited Knollenberg two years earlier. In the Amended Judgment, the trial court also
ordered that Dixon Financial and Hyperdnamics take nothing against Erin Oil.
          Dixon Financial and Hyperdnamics appealed the Amended Judgment. 
          As discussed supra in footnote one, we issued an opinion and judgment in this
appeal on August 31, 2009. In the opinion, we affirmed the summary judgments in
favor of the JBC defendants. We reversed the portions of the Amended Judgment in
favor of Knollenberg and Erin Oil, and remanded the case to the trial court with
respect to the claims against Knollenberg and Erin Oil. 
          One week after our opinion issued, we were informed by Knollenberg that he
had filed Chapter 7 bankruptcy prior to the issuance of our opinion. The bankruptcy
filing resulted in the suspension of this appeal. See Tex. R. App. P. 8.2. And due to
the filing of the petition, our opinion and judgment of August 31, 2009 are void. See
Continental Casing Corp. v. Samedan Oil Corporation, 751 S.W.2d 499, 501 (Tex.
1988). 
          On September 21, 2009, JBC defendants filed a motion to sever Dixon
Financial’s and Hyperdnamics’s appellate claims against Knollenberg and Erin Oil
into a separate appellate cause and to reinstate this appeal. See Tex. R. App. P. 8.3. 
By separate order, the motion to sever and to reinstate was granted. Dixon
Financial’s and Hyperdynamics’s appeal of the Amended Judgment, with respect to
their claims against Knollenberg and Erin Oil, was severed into appellate cause
number 01–10–00033–CV.


 See Ma-Stell, Inc. v. Anadarko E & P Co., No.
10-03-358-CV, 2005 WL 984785, at *1 (Tex. App.—Waco Apr. 27, 2005, order). 
This appeal, i.e., Dixon Financial’s and Hyperdynamics’s appeal of the summary
judgments in favor of the JBD defendants, was ordered reinstated. See id. 
          With this background, we now address the merits of the appeal. 
Summary Judgments
          In their sole issue, Dixon Financial and Hyperdynamics challenge the summary
judgments obtained by the JBC defendants against Dixon Financial and
Hyperdynamics. 
A.      Summary Judgment Against Dixon Financial 
          The JBC defendants sought summary judgment against Dixon Financial on the
basis that Dixon Financial had failed to plead an actionable claim against them. 
          Pointing to the allegations in Dixon Financial’s pleadings, the JBC defendants
asserted that Dixon Financial’s claims were premised on conduct undertaken by an
attorney in the representation of his clients during litigation. The JBC defendants
argued that such conduct is privileged conduct for which attorneys are immune from
suit by non-clients. 
          The Greenberg Peden defendants asserted this same legal argument in support
of their motion for summary judgment in the severed action. See Dixon Fin., 2008
WL 746548, at *6. Dixon Financial premised its claims against the Greenberg Peden
defendants on the same conduct by the same actors, primarily James Chang, as it
based its claims against the JBC defendants. As described supra, this Court upheld
Greenberg Peden’s summary judgment against Dixon Financial based on the same
principle of law (i.e., an attorney’s qualified immunity from suit by a non-client for
litigation conduct) that the JBC defendants asserted to support their motion for
summary judgment at issue here. See id. at *5, 11. We held, based on qualified
immunity, that the Greenberg Peden defendants could not be held liable, as a matter
of law, for the conduct alleged by Dixon Financial. See id. at *11. Dixon Financial
filed a petition for review with the Supreme Court of Texas, which has been denied. 
          Our earlier decision on this issue governs our decision in this appeal. The “law
of the case” doctrine mandates that the ruling of an appellate court on a question of
law raised on appeal will be regarded as the law of the case in all subsequent
proceedings, unless clearly erroneous. Briscoe v. Goodmark Corp., 102 S.W.3d 714,
716 (Tex. 2003). The doctrine applies when the issues of law and fact are
substantially the same in the second proceeding as they were in the first. See Hudson
v. Wakefield, 711 S.W.2d 628, 630 (Tex. 1986). 
          As discussed, the issues of law and fact in this appeal, with regard to
determining the propriety of the summary judgment in favor of the JBC defendants,
are the same as those involved in the earlier appeal with respect to the summary
judgment granted in favor of the Greenberg Peden defendants. We follow our
holding in that appeal and conclude that the JBC defendants cannot be held liable, as
a matter of law, for the conduct pled by Dixon Financial. See Sledge v. Mullin, 927
S.W.2d 89, 93 (Tex. App.—Fort Worth 1996, no writ) (determining that holding in
earlier appeal, in severed part of case, was binding on determination of issue in later
appeal of remainder of case). We hold that the trial court properly granted summary
judgment in favor of the JBC defendants against Dixon Financial.
B.      Summary Judgment Against Hyperdynamics 
          Hyperdynamics challenges the summary judgment obtained by the JBC
defendants with regard to its breach of contract claim. 
          In the instant litigation, Hyperdynamics alleged that the signatories and their
attorneys breached the February 4, 2000 settlement agreement (“the Agreement”)
signed in the Watts litigation. Pursuant to the terms of the Agreement,
Hyperdynamics agreed to prevent Michael Watts from conveying or transferring
Hyperdynamics securities. In return, Erin Oil, Knollenberg, and Bearden agreed to,
and then did, dismiss Hyperdynamics from the Watts litigation. 
          In its cross-action, Hyperdynamics alleged that “[n]othwithstanding the
agreement and the dismissal of all claims [against Hyperdynamics], [the cross-defendants] continued to communicate with Fidelity Transfer for the express purpose
of preventing Fidelity Transfer from transferring specific shares into free trading
shares in Dixon.” Hyperdynamics continued, “In the course of those
communications, [the cross-defendants] continued to assert that Hyperdynamics was
restrained from transferring these shares to Dixon.” Hyperdynamics alleged that such
communications violated “the spirit and terms of the agreement.” 
          The joint motion for summary judgment filed by the cross-defendants to
Hyperdynamics’s claims was a traditional motion for summary judgment, asserting
the qualified immunity privilege, and a no-evidence motion for summary judgment. 
The no-evidence motion for summary judgment averred that “Hyperdynamics has
offered no evidence of any actual damages suffered,” an essential element of each of
Hyperdynamics’s cross-claims, including its breach of contract claim. 
          Hyperdynamics responded to the no-evidence motion for summary judgment
by asserting that it had sustained damages as a result of breach. Particularly,
Hyperdynamics claimed that it continued to incur legal fees and expenses after its
dismissal from the Watts litigation as a result of the breach. Hyperdynamics also
alleged that it had “suffered” damages because Fidelity had sent it a demand letter to
pay its legal fees in the instant litigation. 
          To support its damages allegations, Hyperdynamics offered the affidavit of its
attorney, David Sacks, and the affidavit of its president, Kent Watts. The cross-defendants, including the JBC defendants, objected to and moved to strike the
affidavits. Sustaining the defendants’ objections, the trial court signed an order
striking all evidence offered in support of Hyperdynamics’s response, including the
Sacks and Watts affidavits. 
          The trial court granted summary judgment against Hyperdynamics on its cross-claims without identifying the basis for its ruling. On appeal, Hyperdynamics
contends that the trial erred by striking the affidavits and by granting summary
judgment against it on its breach of contract cross-claim. 
 
          1.       Standard of Review: No-Evidence Motion for Summary Judgment


 
          We review summary judgments de novo. Valence Operating Co. v. Dorsett,
164 S.W.3d 656, 661 (Tex. 2005).
          A party seeking a no-evidence summary judgment contends that there is no
evidence of one or more essential elements of a claim on which an adverse party
would have the burden of proof at trial. Tex. R. Civ. P. 166a(i); Hamilton v. Wilson,
249 S.W.3d 425, 426 (Tex. 2008). Summary judgment must be granted unless the
non-movant produces competent summary judgment evidence raising a genuine issue
of material fact on the challenged elements. Tex. R. Civ. P. 166a(i); Hamilton, 249
S.W.3d at 426. A non-moving party is “not required to marshal its proof; its response
need only point out evidence that raises a fact issue on the challenged elements.” 
Tex. R. Civ. P. 166a (Notes & Comments 1997). This means that the non-movant
must point to some, but not all, evidence supporting challenged elements. Cmty.
Initiatives, Inc. v. Chase Bank, 153 S.W.3d 270, 280 (Tex. App.—El Paso 2004, no
pet.).
          A no-evidence summary judgment motion is essentially a motion for a pretrial
directed verdict. Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572, 581–82 (Tex. 2006). 
Accordingly, we apply the same legal-sufficiency standard of review that is applied
when reviewing a directed verdict. City of Keller v. Wilson, 168 S.W.3d 802, 823
(Tex. 2005). Applying that standard, a no-evidence point will be sustained when (1)
there is a complete absence of evidence of a vital fact, (2) the court is barred by rules
of law or evidence from giving weight to the only evidence offered to prove a vital
fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or
(4) the evidence conclusively establishes the opposite of a vital fact. King Ranch,
Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003); see City of Keller, 168 S.W.3d
at 810. 
          We review a no-evidence summary judgment for evidence that would enable
reasonable and fair-minded jurors to differ in their conclusions. Hamilton, 249
S.W.3d at 426 (citing City of Keller, 168 S.W.3d at 822). In so doing, we view the
summary judgment evidence in the light most favorable to the party against whom
summary judgment was rendered, crediting evidence favorable to that party if
reasonable jurors could, and disregarding contrary evidence unless reasonable jurors
could not. See Mack Trucks, 206 S.W.3d at 582; City of Keller, 168 S.W.3d at 822. 
          Applying these principles, we determine whether Hyperdynamics offered
competent summary judgment evidence to raise a genuine issue of material fact
regarding whether it incurred damages as a result of the alleged breach of the
Agreement.


 We need not decide whether the trial court properly sustained the
objections to Hyperdynamics’s summary judgment evidence because, even with this
evidence, we conclude that Hyperdynamics did not meet its burden to offer sufficient
evidence on the challenged element of actual damages.
          2.       Analysis of Evidence Offered to Show Breach-of-Contract Damages
          On appeal, Hyperdynamics points to the affidavit of its attorney, David Sacks,
who represented Hyperdynamics in the Watts litigation, as evidence of its breach of
contract damages. Hyperdynamics contends that the Sacks affidavit shows that it
incurred attorney’s fees as actual damages as a result of the breach of the February
4, 2000 settlement agreement.
          In his affidavit, David Sacks, testified as follows, with regard to damages:
As part of the representation of Hyperdynamics in the Injunction
Lawsuit [the Watts litigation], I charged and invoiced [Hyperdynamics]
for the attorney’s fees and expenses incurred. After the Agreement of
February 4, 2000, I continued to represent Hyperdynamics in its efforts
to aid the transfer of shares into Dixon. I invoiced my client for my time
and expenses for this representation as well. My total fees and expenses
were at least $30,000.00. These attorneys fees and expenses would not
have been incurred, but for the conduct of the Erin Oil plaintiffs during
the Injunction Lawsuit and after the Agreement of February 4, 2000. 

          Unless expressly provided for by statute or by contract, attorney’s fees incurred
in the defense or prosecution of a lawsuit are generally not recoverable. Turner v.
Turner, 385 S.W.2d 230, 233 (Tex. 1964). This general rule is not without exception. 
Equitable principles allow the recovery of attorney’s fees as actual damages when a
party was required to prosecute or defend a prior legal action as a consequence of a
wrongful act of the defendant. Turner, 385 S.W.2d at 234; Massey v. Columbus State
Bank, 35 S.W.3d 697, 701 (Tex. App.—Houston [1st Dist.] 2000, pet. denied);
Lesikar v. Rappeport, 33 S.W.3d 282, 306 (Tex. App.—Texarkana 2000, pet. denied). 
For the equitable exception to apply, the following two prerequisites must be met: (1)
the plaintiff must have incurred the attorney’s fees in a prior action and (2) the action
must have involved a third party. Turner, 385 S.W.2d at 234. From Sacks’s
affidavit, it is not clear that the claimed fees were incurred in the defense or
prosecution of a prior action involving a third party. As described, the claimed fees
were incurred in relation to the Watts litigation. The claimed attorney’s fees were not
incurred in litigation with a third person, rather, the fees were incurred following
litigation with Hyperdynamics’ present adversaries in this litigation. See id. at 237.
          To obtain attorney’s fees as actual damages, the plaintiff must also show that
the claimed attorney’s fees were reasonable and necessary. See id. at 234; Lesikar,
33 S.W.3d at 306; Powell v. Narried, 463 S.W.2d 43, 46 (Tex. Civ. App.—El Paso
1971, writ ref’d n.r.e.). As pointed out by the JBC defendants, the Sacks affidavit
makes no showing that any attorney’s fees incurred as a result of the alleged breach
of the Agreement were reasonable or necessary. See Lesikar, 33 S.W.3d at 308
(reversing award of attorney’s fees as actual damages on legal sufficiency ground
because no evidence was offered to show reasonableness of attorney’s fees). Nor
does Sacks’s affidavit testimony make any attempt to segregate the amount of fees
attributable to alleged breach of the Agreement and those incurred defending against
the Watts litigation. See Powell, 463 S.W.2d at 46 (sustaining appellant’s challenge
to award of attorney’s fees as damages because no evidence offered to show
reasonableness of fees and no attempt made to segregate attorney’s fees pertaining
only to defense of action brought by third party). Applying the no-evidence standard
within the context of the principles governing attorney’s fees as damages, we
conclude that Sacks’s testimony falls short of being competent summary judgment
evidence to raise a genuine fact issue regarding whether Hyperdynamics sustained
actual damages as a result of the alleged breach of the Agreement.
          Hyperdynamics also relies on the affidavit of its president, Kent Watts. On
appeal, Hyperdynamics cites the following provision of the Watts affidavit:
As a result of the underlying injunction action [the Watts litigation],
Hyperdynamics was compelled to retain counsel to represent it. It
incurred legal fees and expenses through that counsel of at least
$30,000. In addition, Hyperdynamics’ agreement with its transfer agent
includes the right of the transfer agent to seek to recover its costs and
attorney’s fees from any dispute or litigation in which the transfer agent
becomes involved. Fidelity Transfer has made demand upon
Hyperdynamics for payment of the attorney’s fees and expenses it may
incur in this lawsuit. See exhibit “1” attached which is a true and correct
copy of a letter from Fidelity Transfer seeking reimbursement of its
attorney’s fees and expenses. Those damages are in addition to the
damages sought by Dixon in this lawsuit and the attorneys [sic] which
are accruing for Hyperdynamics’ involvement in this lawsuit.



          In the letter attached to Watts’s affidavit, Fidelity informed Hyperdynamics that
it “had been forced to retain local council [sic] in Houston” with regard to the instant
suit filed by Dixon Financial in which Fidelity was a named defendant. The letter
requested that Hyperdynamics “overnight” a check for $3,000 to Fidelity. 
          On appeal, Hyperdynamics contends that Fidelity’s demand for monies to cover
its attorney’s fees that it “may incur” is evidence that Hyperdynamics itself incurred
damages as a result of the breach of the Agreement. The important aspect of the
Watts affidavit is not, however, what is says, but what it does not say. Watts never
states that Hyperdynamics paid Fidelity’s attorney’s fees, planned to pay the fees, or
felt legally obligated to pay the fees. Nor does the affidavit indicate how Fidelity’s
attorney’s fees incurred in the present litigation are attributable to the alleged breach
of the Agreement. To the contrary, Fidelity was sued in this lawsuit by Dixon
Financial for its own alleged tortious acts. 
          The Supreme Court of Texas has explained, “[W]hen the evidence offered to
prove a vital fact is so weak as to do no more than create a mere surmise or suspicion
of its existence, the evidence is no more than a scintilla and, in legal effect, is no
evidence.” Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 601 (Tex. 2004) (quoting
Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983)). To raise a genuine issue
of material fact, the evidence must transcend mere suspicion. Id. Evidence that is so
slight as to make any inference a guess is in legal effect no evidence. Id. Here,
Watts’s affidavit testimony does nothing more than raise a surmise or suspicion that
Hyperdynamics incurred damages as a result of the alleged breach of the Agreement. 
Any inference made from Watts’s testimony that Hyperdynamics sustained damages
attributable to the alleged breach would be purely speculative. See id. Accordingly,
the Watts affidavit constitutes “no evidence” of damages. See id. 
          Taken either individually or together, the affidavits do not constitute legally
sufficient evidence to prevent a no-evidence summary judgment on grounds of lack
of breach of contract damages. See Mack Trucks, 206 S.W.3d at 583. 
Hyperdynamics did not meet its burden to defeat the JBC defendants’ summary
judgment contention that no evidence existed to support the actual-damages element
of Hyperdynamics’s breach of contract claim. We hold that the trial court properly
granted summary judgment in favor of the JBC defendants with respect to
Hyperdynamics’s breach of contract claim.
          We overrule Dixon Financial’s and Hyperdynamics’s sole issue.
Conclusion
          We affirm the portion of trial court’s judgment that grants summary judgment
in favor of the JBC defendants against Dixon Financial and Hyperdynamics.



                                                             Laura Carter Higley
                                                             Justice

Panel consists of Justices Jennings, Keyes, and Higley.

Justice Jennings, dissenting, in part.