# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00686-CV

**Harvey L. Schwartz and Kenneth C. Schwartz, Appellants**

**v.**

**Tom W. Gregg, Jr., Appellee**

**FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 391ST JUDICIAL DISTRICT
NO. D-07-0057-C-1, HONORABLE THOMAS J. GOSSETT, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Appellants Harvey L. Schwartz[1] and Kenneth C. Schwartz, as next friend of Harvey L. Schwartz,[2] sued appellee Tom W. Gregg, Harvey's lawyer, for breach of fiduciary duty, negligent misrepresentation, and statutory and common-law fraud. The suit stemmed from Gregg's representation of Harvey, Harvey's late wife Jo, and Harvey's step-children in the drafting of a "ratification deed" purporting to ratify Jo's prior transfer of Harvey's land to his step-children. Gregg moved for traditional and no-evidence summary judgment on all of Schwartz's claims. The trial court granted summary judgment without specifying its grounds. In six issues, Schwartz asserts that the trial court erred in granting summary judgment because: (1) Gregg was not entitled to rely

---

[1] Harvey Schwartz died while this appeal was pending. His brother, Kenneth Schwartz, was appointed temporary administrator of Harvey's estate.

[2] We will use "Schwartz" to refer to the appellant, Kenneth C. Schwartz, in his roles as next friend for Harvey and as administrator of Harvey's estate. For clarity, we will otherwise refer to Harvey, Kenneth, and Harvey's late wife, Jo, by their first names.

on the applicable power of attorney's "hold harmless" provision because the real estate transaction here was not within the powers included in the document; (2) the burden rested with other defendants not parties to this appeal to prove that the real estate transaction here was fair and equitable; (3) the court's order erroneously disposed of all claims against Gregg even though such disposition was unsupported by the grounds of his motion; (4 & 5) the court erroneously characterized the fiduciary-duty and negligent-misrepresentation claims against Gregg as professional negligence claims, then erroneously found that the claims were barred by limitations even though "Gregg did not meet his burden of proving limitations as an affirmative defense"; and (6) the record contains more than a scintilla of probative evidence with respect to each of the challenged elements of Schwartz's claims. Concluding that no-evidence summary judgment for Gregg was proper, we will affirm the trial court's judgment on that basis.

## FACTUAL AND PROCEDURAL BACKGROUND

Harvey, a farmer by trade, had been disabled since 1986 because of severe bipolar disorder, diabetes, and other health concerns requiring nursing care. For many years, Harvey's late wife, Dorothy Jo (who went by "Jo"), a nurse, provided care for him at the family home. In 2002 Jo was diagnosed with pancreatic cancer. As her condition worsened, Jo needed to be hospitalized and became unable to care for Harvey, so she found a place for him in a local nursing facility.

On her deathbed, acting under the putative authority of a durable power of attorney by which Harvey had previously made her his attorney in fact, Jo deeded most of Harvey's real property to Tana Sue Pyssen and Michael Taylor, her children (Harvey's step-children). Jo died the next day. Because some question existed as to whether any consideration was exchanged for the

2

land—and whether the power of attorney gave Jo the power to dispose of Harvey's assets without consideration—Pyssen and Taylor later requested that Gregg draft a "ratification deed" for Harvey to sign to ratify the transaction.

Schwartz alleges that Pyssen and Taylor conspired with Gregg to gain ownership of Harvey's farmland for themselves, despite knowing that Harvey intended to leave the land to his brother Kenneth's son, Kent Schwartz. Specifically, Schwartz alleged that:

> [a]fter the death of [Jo], Pyssen began exercising undue influence, dominion and control over [Harvey] and she took complete control of the financial and domestic affairs and bank account of [Harvey]. Pyssen at all times was acting on her behalf and the behalf of her brother, Taylor, in a scheme to obtain the Farms from [Harvey]. Gregg, at the request and as a part of the scheme, presented the Ratification Deed to [Harvey] on or about July 1, 2004. Pyssen, Taylor and Gregg, therefore, were acting in concert to exercise undue influence upon [Harvey] to have him deed the Farms to Pyssen and Taylor.

In 2006 Harvey signed a new power of attorney appointing his brother, Kenneth, as his attorney in fact. He also revoked his old will, which left the land to Pyssen and Taylor, and executed a new will leaving his estate to Kent.

Gregg disputes Schwartz's allegations. He asserts that Jo realized that when she died Harvey would lose her medical benefits, which could force him to sell his assets to pay for nursing care. Gregg asserts that Jo planned to have Harvey qualify for Medicaid, and that the deeds executed by Jo—and the ratification deed signed by Harvey—were part of that plan. Gregg drafted all the deeds in question and provided legal advice to Harvey about how to qualify for Medicaid and the legal effect of signing the ratification deed. After consulting with Gregg, Harvey signed the ratification deed.

3

Kenneth filed this lawsuit on Harvey's behalf seeking rescission of the deeds, the return of the property, and damages from Pyssen, Taylor, and Jo's estate. Schwartz joined Gregg via his first amended petition, alleging a breach of fiduciary duty, negligent misrepresentation, and statutory and common-law fraud stemming from Gregg's representation of Harvey vis-à-vis the ratification deed.

Gregg moved for traditional and no-evidence summary judgment, asserting that (1) Harvey signed the ratification deed of his own free will, (2) the power of attorney had given Jo the authority to transfer Harvey's property anyway, so the later ratification deed had no effect, (3) the claim for breach of fiduciary duty fails because the power of attorney indemnified Gregg for reasonably relying on Jo's actions done under the color of its authority and because Gregg did not receive an improper benefit from his actions, (4) the negligent-misrepresentation claim was barred by the statute of limitations, (5) insofar as Schwartz's other claims were merely "fractured professional negligence" claims, they were barred by the two-year statute of limitations, and (6) each of the claims fails because Schwartz failed to present more than a scintilla of evidence on the challenged elements of his claims. The trial court granted Gregg's summary-judgment motion without specifying the grounds therefor and severed Schwartz's claims against Gregg, making the summary-judgment order final and appealable.

**STANDARD OF REVIEW**

Concluding that the trial court properly granted Gregg's no-evidence summary-judgment motion, we limit our discussion of the standard of review accordingly.

4

"To prevail on a no-evidence summary-judgment motion, a movant must allege that there is no evidence of an essential element of the adverse party's claim." *Southwest Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002) (citing Tex. R. Civ. P. 166a(i)). The burden then shifts to the nonmovant to produce more than a scintilla of probative evidence to support each challenged element of its claims. *Forbes, Inc. v. Granada Biosciences*, 124 S.W.3d 167, 172 (Tex. 2003). More than a scintilla of evidence exists when reasonable and fair-minded people could differ in their conclusions based on the evidence in the record. *Id.*; *see also Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) ("'[W]hen the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence.'" (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983))). "Both direct and circumstantial evidence may be used to establish any material fact." *Ford Motor Co.*, 135 S.W.3d at 601. "To raise a genuine issue of material fact, however, the evidence must transcend mere suspicion. . . . Evidence that is so slight as to make any inference a guess is in legal effect no evidence." *Id.* We review "the evidence . . . in the light most favorable to the non-movant." *Id.*

**DISCUSSION**

In his sixth issue, Schwartz asserts that the trial court erred in granting Gregg's no-evidence motion for summary judgment because the record contains more than a scintilla of evidence as to each challenged element of his claims. Schwartz brought four claims against Gregg: (1) negligent misrepresentation, (2) breach of fiduciary duty, (3) common-law fraud, and (4) fraud

5

in a real estate transaction, *see* Tex. Bus. & Com. Code Ann. § 27.01 (West 2009). We will analyze the evidence for each claim in turn.

### *Negligent Misrepresentation*

The elements of negligent misrepresentation are:

> (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

*Federal Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).[3]

In his no-evidence motion for summary judgment, Gregg asserted that there was no evidence that (1) Gregg provided false information to Harvey, (2) Gregg failed to exercise reasonable care or competence in obtaining or communicating information to Harvey, or (3) Harvey was harmed by any alleged misrepresentation.

---

[3] In his traditional motion for summary judgment, Gregg argued that Schwartz's claim for negligent misrepresentation was merely a "fractured" professional negligence claim. Schwartz asserts that he can maintain a separate cause of action for negligent misrepresentation. Because Gregg's alleged misrepresentations are within the scope of his professional representation of Schwartz, it appears doubtful that Schwartz could maintain a separate negligent-misrepresentation claim. *See McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 792 (Tex. 1999) ("The theory of negligent misrepresentation permits plaintiffs *who are not parties to a contract for professional services* to recover from the contracting professionals." (Emphasis added.)). Because we conclude that the trial court did not err in granting Gregg's no-evidence summary judgment on this claim, however, we need not decide whether Schwartz's negligent-misrepresentation claim was really a claim for professional negligence.

6

Schwartz asserts that Gregg provided the following allegedly false information to Harvey: (1) "the prior Gift Deeds had been executed and were effective"; (2) "the only way to be able to keep the farms in the family" was for Harvey to sign the ratification deed; (3) the transfer of Harvey's land was being done for his benefit and "that it was the only way for him to continue to receive long term care by way of Medicaid"; and (4) "the Ratification Deed was to finish a plan his wife had put together" to ensure he would qualify for Medicaid.

As evidence in support of his allegations, Schwartz attached portions of Pyssen's, Gregg's, and Kenneth's depositions, as well as Kenneth's affidavit. Gregg objected to several statements in Kenneth's affidavit as hearsay. The trial court sustained Gregg's objections and struck the complained-of portions. Schwartz does not appeal the court's evidentiary rulings; therefore, we cannot consider the stricken portions in our no-evidence review. *See Trudy's Tex. Star, Inc. v. City of Austin*, 307 S.W.3d 894, 898 n.2 (Tex. App.—Austin 2010, no pet.) (evidence excluded by trial court on evidentiary grounds and not appealed is not part of summary-judgment record).

As evidence for the alleged misrepresentation regarding the effectiveness of the prior warranty deeds, Schwartz points to the following passages in Gregg's deposition transcript:

Q. Well, in the course of that conversation [with Harvey] did you tell him that he didn't have to sign [the ratification deed]?

A. Sure, I did. I said, "If you don't want this to happen, Harvey, you don't have to sign this."

Q. And at the same time you said it didn't make any difference if he did or didn't?

A. No.

Q. Okay.

A. He didn't say that.

Q. No. I'm saying did you say that? Otherwise, when you told him he didn't have to sign—

A. No. He didn't have to sign, but if he—I explained to him that the signing was a reaffirmation of the plan to try to get him on Medicaid, which he was sure interested in.

Q. Well, did he think that land was going to come back to him?

A. No. I explained to him that it could not come back to him as long as he was on Medicaid.

. . . .

Q. To shorten this a little bit, did you explain to Harvey what would happen if he didn't sign the ratification?

A. I told him that the purpose of all of this was to get him qualified for Medicaid. What was your question?

Q. If you told him what would happen if he did not sign. Did you tell him what would happen if he did not sign?

A. I don't know what would have happened if he did not sign it, so I probably didn't.

. . . .

Q. But in any event, you did not tell [Harvey] what would happen if he didn't sign?

A. I don't recall in that regard.


Gregg's testimony above amounts to no more than a scintilla of evidence that Gregg made any

representation at all—false or true—with respect to the effectiveness of the four warranty deeds. At

8

most, Gregg's testimony establishes that he does not remember if he told Harvey anything about the deeds' effectiveness. Without more, such testimony would not allow a reasonable fact finder to conclude that Gregg did, indeed, make such a statement to Harvey. Accordingly, we conclude that there is no evidence that Gregg told Harvey that "the prior Gift Deeds had been executed and were effective."

Next, we examine the evidence as to the second allegation—that Gregg told Harvey or implied that "the only way to be able to keep the farms in the family" was to sign the ratification deed. As evidence, Schwartz points to the following excerpt from Gregg's deposition in which Gregg testified about the conversation he had with Harvey just before Harvey signed the ratification deed:

A. I read the whole [ratification deed] to him and I said, "Now, do you understand what Jo has done and do you agree with that or do you want to take that back and cancel it?"

"No, I don't want to cancel it."

"All right. Do you want to sign this yourself, this ratification of what Jo did, this approval of what Jo did, and sign it as a deed to [Taylor] and [Pyssen]?"

He thought about that a little bit and he said, "It's always been my intention that they have that property."

And I said, "Well, what you're doing is you're just speeding that up a little bit because it was your intention and your will—" Because I had read his will when I did that inventory of that box.

Q. When you did what inventory?

A. The inventory of the [couple's] safety deposit box [after Jo's death].

Q. Okay.

9

A. I said, "I understand. I understand that, and what you are doing is you're speeding it up now, to do it now."

And he thought about that a little bit and he said, "Well, my only concern is that they might sell that land."

And I said, "Well, Harvey, they might have the right" — Or they would have the right if they owned it to sell it, "But to my knowledge no one has ever mentioned the fact of selling that property. They want to keep it in the family."

"Okay." So he signed it. I notarized it.

Viewed in the light most favorable to Schwartz, this testimony represents no more than a scintilla of evidence that Gregg represented to Harvey that "the only way to be able to keep the farms in the family" was to sign the ratification deed. In fact, this testimony supports the opposite conclusion—that Gregg specifically told Harvey that Pyssen and Taylor could sell the land to someone outside the family if Harvey signed the ratification deed. Consequently, there is no evidence for the first element of the negligent-misrepresentation test as to this alleged statement.

We now consider the third alleged misrepresentation—that Gregg told Harvey that the transfer of Harvey's land was being done for his benefit "and impliedly advis[ed] that it was the only way for him to continue to receive long term care by way of Medicaid." Schwartz again cites Gregg's deposition as evidence. We agree that Gregg's testimony creates, at least, a fact question as to whether Gregg told Harvey that (1) the transfer of Harvey's land was part of a plan to qualify him for Medicaid, and (2) to qualify for Medicaid Harvey had to divest himself of his land. There is no evidence, however, that these representations were false.

Schwartz asserts that "there is no testimony by [Gregg] showing that he talked to [Harvey] about any alternative way to pay for his care and this is supported by [Kenneth]'s affidavit." He argues that this lack of testimony, coupled with Gregg's representations to Harvey about how to qualify for Medicaid, raises a fact issue about the statement's truth. We disagree. First, portions of Kenneth's affidavit were stricken below and, therefore, are not part the record for our review. The non-stricken portions do provide some evidence that Harvey had alternative means to pay for his medical care without resorting to Medicaid. That evidence, however, is not probative of whether Gregg's statements to Harvey about how to qualify for Medicaid were false. The remainder of the summary-judgment evidence, including Gregg's deposition, is silent as to whether Gregg did or did not inquire about or advise Harvey on alternative ways to pay for his care. Thus, there is no evidence on this point. Second, even assuming there was some evidence about whether Gregg assessed Harvey's ability to pay for his medical care without Medicaid, Gregg's failure to inquire if Harvey had other ways to pay for his long-term care does not give rise to a reasonable inference that Gregg negligently misrepresented the conditions necessary to qualify for Medicaid or that the transfer of Harvey's land was not part of a plan to meet those conditions. Accordingly, there is no evidence with respect to the first element of the negligent-misrepresentation test on this alleged misrepresentation.

Finally, we turn to the fourth alleged misrepresentation—that Gregg told Harvey that "the Ratification Deed was to finish a plan his wife had put together" to ensure he would qualify for Medicaid. Gregg admitted in his deposition that he told Harvey that the ratification deed was part

11

of a plan that Jo had initiated after consulting Laura Swann, an elder law specialist, to ensure that Harvey became Medicaid eligible. There is no evidence, however, that this representation was false.

As evidence that this statement was false, Schwartz points to allegedly conflicting testimony in the depositions of Pyssen and Gregg regarding whether Jo ever consulted Swann. Schwartz alleges that "[Gregg] testifies in his deposition . . . that he told [Harvey], to get him to sign the Ratification deed, that [Jo] talked to Laura Swann . . . and she advised [Jo] to spend down [Harvey's] money to qualify for medicade [sic]." Schwartz claims that Jo never actually met Laura Swann, meaning Gregg's representations to Harvey were false. He argues that

> [t]he falsity of these representations by [Gregg] are shown by [Pyssen's] testimony in her deposition . . . that she had gone to [Swann] for the first time after her mother's death. Pyssen further testified . . . that she found [Swann] in the yellow pages on her own and that her mother did not tell her about [Swann]. Therefore, the representation that this was a plan of [Jo's that Harvey] should continue was false.

Pyssen indeed testified that she first sought Swann's counsel after her mother's death. Such testimony, however, is only probative of the fact that *Pyssen* did not consult with Swann while Jo was alive. It does not give rise to a reasonable inference that *Jo* either did or did not consult with Swann before her death. In effect, Schwartz asks us to infer that Jo did not consult with Swann because neither Jo nor Swann revealed to Pyssen that Jo had consulted with Swann. This is not, however, an inference that a reasonable fact-finder could make based on the evidence presented. The fact that Jo did not tell Pyssen about her consultation with Swann merely creates a *suspicion* that such a consultation did not in fact take place. Likewise, Swann's failure to tell Pyssen that she had previously counseled Jo about Harvey's situation gives rise only to a suspicion that

12

Swann had not counseled Jo, especially in light of an attorney's duty to safeguard the confidences of her clients. *See, e.g.*, Tex. Disciplinary R. Prof'l Conduct 1.05(b)(1); *In re Grand Jury Subpoena*, 926 F.2d 1423, 1431 (5th Cir. 1991). We have no testimony from Swann, nor do we have any documentary evidence—such as receipts or invoices—that show whether or not Jo was Swann's client. Viewing the evidence as a whole and in the light most favorable to Schwartz, we conclude that he has presented no more than a scintilla of probative evidence to support his claim that this statement was false.

Furthermore, there is no evidence that Harvey was harmed as a result of any of the alleged misrepresentations. The only evidence submitted by Schwartz on this point was Gregg's testimony, which, as quoted and discussed above, tends to suggest that Harvey was made better off and not harmed. Although Schwartz points to evidence in Kenneth's affidavit arguably showing that Harvey was harmed, the portions of the affidavit tending to support that assertion were stricken as hearsay. Additionally, we do not think that, as Schwartz implies, it is self-evident that Harvey suffered harm here. Although Harvey was left with few assets after the transfer, the only evidence before us suggests that Harvey (1) wanted to become Medicaid-eligible, (2) knew that giving away his land would have helped him to do so, (3) gave his land to the same people who would have inherited the land if he had died, and (4) eventually did qualify for Medicaid. That there may have been other—perhaps better—ways to achieve the same goals does not tend to suggest that Harvey was harmed by choosing this option.

Because we conclude that Schwartz presented no evidence that the alleged misrepresentations either occurred or were false, or that Harvey was harmed by any of Gregg's

representations, the trial court did not err when it rendered summary judgment for Gregg on Schwartz's negligent-misrepresentation claim.

### *Breach of Fiduciary Duty*

We now turn to Schwartz's breach-of-fiduciary-duty claim against Gregg. The elements of breach of fiduciary duty are: the existence of a fiduciary relationship, and a breach of duty by the fiduciary that causes damages to the client or improper benefit to the fiduciary. *Burrow v. Arce*, 997 S.W.2d 229, 237 (Tex. 1999); *see also Beck v. Law Offices of Edwin J. (Ted) Terry, Jr., P.C.*, 284 S.W.3d 416, 429 (Tex. App.—Austin 2009, no pet.); *Floyd v. Hefner*, 556 F. Supp. 2d 617, 661 (S.D. Tex. 2008).

In his no-evidence motion for summary judgment, Gregg asserted that there was no evidence as to elements two and three—i.e., that there was no evidence of breach and no evidence either that Harvey was damaged or that Gregg was benefitted. Gregg admits he was Harvey's attorney at the time the alleged breach of fiduciary duty occurred; thus, the first element of the test is not in dispute. *See Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex. 1988) ("A fiduciary relationship exists between attorney and client.").

In his live pleading, Schwartz alleged that Gregg breached his fiduciary duty to Harvey by acting as a co-conspirator with Pyssen and Taylor in a scheme to defraud Harvey of his farm land. He also alleged that Gregg lied to Harvey, failed to disclose a conflict of interest, and abused Harvey's trust to induce him to sign the ratification deed. Specifically, Schwartz alleged:

> Gregg failed to adequately advise and disclose to [Harvey] his legal options concerning said Ratification Deed. Gregg further failed to advise [Harvey] of a

14

conflict of interest he had in that he represented the proposed grantees, [Taylor and Pyssen,] under the Ratification Deed and was related to them through his wife. Gregg did not advise [Harvey] to obtain independent legal counsel. Gregg breached his fiduciary duty by participating in the preparation of and procuring the execution of the Ratification Deed. The execution of the Ratification Deed was to the detriment of [Harvey] and has damaged [Harvey] by depriving him of his entire interest in the Farms and [Schwartz] seek[s] recovery for said damages against Gregg.

As evidence of breach, Schwartz asserts that there was an inherent, undisclosed conflict of interest in Gregg's representing both Harvey and Pyssen. Schwartz asserts that

[t]he conflict clearly arises from the fact that [Harvey] is being asked to transfer all of his farm property to his two stepchildren . . . and this would forever take this property away from him. . . . A conflict clearly exists because Gregg represented two parties on opposite sides of a deed involving a decision to transfer all of one parties' [sic] property to the other.

Schwartz also asserts that Gregg's failure to advise Harvey to obtain independent counsel is evidence of a conflict of interest. Schwartz argues that Harvey's concern about whether Pyssen and Taylor could subsequently sell the land and the fact that Harvey was reluctant to sign the ratification deed is evidence that Pyssen's and Harvey's interests were in conflict.

Even assuming that Gregg breached his fiduciary duty to Harvey, however, Schwartz has failed to present more than a scintilla of evidence either (1) that Harvey suffered damages, or (2) that Gregg received any improper benefit from the representation. The only evidence as to Harvey's wishes comes from Gregg's deposition. As quoted above, Gregg's uncontroverted testimony was that Harvey intended for Pyssen and Taylor to have his land, that Harvey wanted to become Medicaid eligible, and that he understood that giving away his land would help to

15

accomplish that goal. Furthermore, Gregg testified that Harvey's will at the time named Pyssen and Taylor as beneficiaries of Harvey's estate should Jo predecease Harvey. There is no evidence to the contrary about Harvey's wishes. Consequently, Schwartz has not presented more than a scintilla of evidence that Harvey was harmed by Gregg's breach, if any, of his fiduciary duty.

In support of his assertion that Harvey was harmed, Schwartz notes that Gregg testified that Harvey was reluctant to sign the ratification deed because he was concerned that Pyssen and Taylor would sell the land. Schwartz cites to the following testimony in Gregg's deposition:

Q. And do I interpret this same letter . . . of July 22, [2004] to [Pyssen] where it says Harvey was somewhat reluctant to sign the deed at first—Have I quoted that correctly?

A. Yes. Because like I said in the letter, he was concerned that perhaps [Pyssen and Taylor] would just turn around and sell [the land].

This exchange is not probative of whether Harvey was harmed by signing the ratification deed. It tends to establish the fact that Harvey was concerned, around July 22, 2004, about how Pyssen and Taylor might use his land in the future if he chose to give it to them. The existence of such a concern, however, is not enough evidence for a reasonable, fair-minded person to decide that Harvey was harmed by later signing the ratification deed.

Schwartz also asserts that Gregg received an improper benefit from representing Harvey because of his "family" relationship to Pyssen. Pyssen is Gregg's wife's nephew's wife. Schwartz argues that, simply by virtue of this relationship, Gregg was improperly enriched when Pyssen became half-owner of Harvey's land. We think that evidence of Gregg's distant relationship to Pyssen creates no more than a suspicion that Gregg was improperly enriched here, which is no

16

more than a scintilla of evidence. *See Ford Motor Co.*, 135 S.W.3d at 601 ("'[W]hen the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence.'" (quoting *Kindred*, 650 S.W.2d at 63)). Schwartz points to no other evidence that would tend to show that Gregg was improperly enriched.

Having concluded that Schwartz presented no evidence with respect to the damages/enrichment element of his fiduciary-duty claim, we hold that the trial court did not err in granting summary judgment for Gregg on that claim.

### *Common-Law Fraud and Statutory Fraud in a Real Estate Transaction*

Finally, we examine the evidence with respect to Schwartz's two fraud claims. The elements of common-law fraud are: (1) a material misrepresentation, (2) which was false, (3) which was either known to be false when made or was asserted without knowledge of its truth, (4) which was intended to be acted upon, (5) which was relied upon, and (6) which caused injury. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998). The elements of statutory fraud in a real estate transaction are found in section 27.01 of the business and commerce code:

> (a)  Fraud in a transaction involving real estate or stock in a corporation or joint stock company consists of a
>
> > (1)  false representation of a past or existing material fact, when the false representation is
> >
> > > (A)  made to a person for the purpose of inducing that person to enter into a contract; and

17

        (B)      relied on by that person in entering into that contract; or

(2)  false promise to do an act, when the false promise is

        (A)      material;
        (B)      made with the intention of not fulfilling it;
        (C)      made to a person for the purpose of inducing that person to enter into a contract; and
        (D)      relied on by that person in entering into that contract.

Tex. Bus. & Com. Code Ann. § 27.01 (West 2009).

Gregg asserted in his no-evidence motion for summary judgment that there is no evidence that (1) Gregg made any false representations or made false statements with reckless disregard for their truth, (2) Harvey reasonably relied on the allegedly false statements, (3) there was a conspiracy or fraudulent scheme, and (4) Harvey was harmed by any alleged false representations.

Schwartz asserts that "[t]he false representations to support a finding of a fraudulent scheme are recited above concerning negligent misrepresentations immediately above." Because we have held that there is no evidence that the alleged representations were made or that they were false, we need not discuss them again here. For the reasons stated above, we hold that there is no evidence to support Schwartz's claims for fraud. Accordingly, we overrule Schwartz's sixth issue.

Because we hold that the trial court did not err in granting Gregg's no-evidence motion for summary judgment on all of Schwartz's claims, we need not reach his other issues on appeal.

## CONCLUSION

Having determined that the trial court did not err in granting summary judgment in favor of Gregg, we affirm the trial court's order.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop

Affirmed

Filed:   July 28, 2010